# Exhibit A



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed December 19, 2022

*Mark X. Mullin*
_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re | § | Chapter 11 |
| | § | |
| **LEADING LIFE SENIOR LIVING, INC.,** | § | Case No. 22-42784-mxm |
| | § | |
| Debtor. | § | |
| | § | |

### ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR AN ORDER (I) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (II) APPROVING BID PROCEDURES AND PROTECTIONS IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (III) APPROVING THE FORM AND MANNER OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS; AND (IV) GRANTING RELATED RELIEF

Upon the *Emergency Motion for an Order (I) Approving the Sale of Substantially All of the Debtor's Assets; (II) Approving the Bid Procedures and Protections in Connection with the Sale of Substantially All of the Debtor's Assets; Approving the Form and Manner of Assumption and Assignment of Executory Contracts; and (IV) Granting Related Relief* (the "**Motion**") [Docket

No. 54] filed by Leading Life Senior Living, Inc. ("**Debtor**"), the Court having considered the Motion, the declaration of Joseph V. Pegnia, the Debtor's Chief Restructuring Officer, in support thereof, and having considered the statements of counsel and evidence presented at the hearing before the Court on the Motion (the "**Sale Procedures Hearing**"); and the Court having found that it has jurisdiction to consider the Motion to Sell and relief requested therein pursuant to 28 U.S.C. Sections 157 and 1334; and the Court having found it is proper to enter a final order on this matter consistent with Article III of the United States Constitution; and venue of this proceeding and Motion in this district being proper pursuant to 28 U.S.C. Sections 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interest of the Debtor's estate, its creditors, and other parties of interest; and the Court having found that the Debtor's notice of the Motion and the opportunity for a hearing on the Motion were sufficient under the circumstances, and no other notice need be provided; and upon all of the proceedings before the Court and after due deliberation the Court having determined that the relief requested in the Motion: (i) represents a sound exercise of the Debtor's business judgment; (ii) is supported by a business justification; and (iii) is necessary and essential to maximize the value of the Debtor's estate (the "**Estate**"); and upon the record herein and due deliberation thereon, and good and sufficient cause having been shown; the Court finds and determines as follow**s**:

A.      The Debtor has articulated good and sufficient reasons for, and the best interests of the Estate will be served by, the Court granting the relief requested in the Motion, including approval of the bid procedures and the sale of the assets (including the assumption of resident contract or leases) free and clear of any and all liens, claims, interests, and encumbrances (the "**Sale**").

B.      The Bid Procedures, attached as **Exhibit A**, are fair, reasonable, and are appropriate

and designed by maximize the value to the Estates and generate higher and better offers.

C.      The Debtor has articulated a good and sufficient reason for the Sale, which is

supported by a business justification, good business judgment, and sound business reasons.

D.      The Auction and Sale Notice, described in the Motion and attached as **Exhibit B**,

are appropriate, adequate, and sufficient, and are reasonably calculated to provide all interested

parties with timely and proper notice of the Auction, the Sale, and the Bid Procedures. No other

or further notice is required for the Sale or the Bid Procedures, as set forth herein and in the Motion

to Sell.

E.      The form and manner of service of the Cure and Possible Assumption and

Assignment Notice, described in the Motion to Sell and attached as **Exhibit C**, is approved in all

respects. Service of the Cure and Possible Assumption and Assignment Notice[1], as set forth herein,

constitutes sufficient notice of the assumption and assignment procedures described in the Motion

to Sell.

F.      As demonstrated by the sound business justifications set forth in the Debtor's

Motion to Sell and at the Sale Procedures Hearing, the entry of this Order is in the best interest of

the Debtor, its Estate, its residents, and all other parties of interest herein.   It is therefore

**ORDERED** as follows:

1.      The Motion is GRANTED as set forth herein.

2.      The Bid Procedures attached as **Exhibit A** are approved in all respects and

shall govern all bids and bid proceedings relating to the sale of the Debtor's Assets.  The

---

[1] Capitalized terms not otherwise defined herein shall be given the meaning assigned to them in the Motion.

Debtor is authorized to take any and all actions necessary or appropriate to implement the Bid Procedures or obtain the highest and best outcome from the Sale.

3.  Except as otherwise ordered by this Court, the Sale shall be free and clear of all liens, claims, interests, and encumbrances, with all such liens, claims, interests and encumbrances attaching automatically to the proceeds of the Sale in the same manner, validity and priority that they attached to the Debtor's Assets prior to the Sale.

4.  The failure to specifically include or reference any particular provisions of the Bid Procedures in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Bid Procedures are authorized and approved in their entirety.

5.  The form and manner of service of the Auction and Sale Notice is approved in all respects.  Within two (2) business days following the entry of this Order, the Debtor shall serve the Auction and Sale Notice on (i) all parties that have requested notice in this Bankruptcy Case as of the date hereof, (ii) all creditors of the Debtor, (iii) any potential bidders who previously communicated with B. Riley, (iv) all counterparties to any of the Assigned Contracts, (v) the Office of the United States Trustee for the Northern District of Texas, (vi) counsel for the Bond Trustee, (vii) counsel for the DIP Lender, (viii) the Oklahoma State Department of Health, (ix) anyone else appearing on the creditor matrix (collectively, the  "**Parties in Interest**").  Service of the Auction and Sale Notice, as set forth herein, constitutes sufficient notice of the Auction and Sale Hearing.

6.  The Debtor is authorized and approved to enter into the Stalking Horse APA with the Stalking Horse, with those revisions agreed to by the parties at the Sale Procedures Hearing, including that the fees and expenses of the Stalking Horse incurred in connection with its efforts to negotiate and consummate the Sale shall be reasonable, and that the Purchase Price (as defined in the Stalking Horse APA) and all rights of the Debtor under the Stalking Horse APA shall be

Excluded Assets (as defined in the Stalking Horse APA). The Court further specifically approves the Bid Protections, which include a break-up fee of 4% of the purchase price set forth in the Stalking Horse APA plus actual reasonable expenses not to exceed $200,000.  The Bid Protections shall be the exclusive remedy of the Stalking Horse and its affiliates for any termination of the Stalking Horse APA. In no event shall the Debtor or any of their respective affiliates have any liability with respect to the Stalking Horse or any of its affiliates, in connection with the Stalking Horse APA, in excess of the Break-Up Fee and the expense reimbursement in the event that the Stalking Horse APA terminates pursuant to the terms thereof that gives rise to the Bid Protections, and in such event any claim, right or cause of action by the Stalking Horse APA or its affiliates against the Debtor or its affiliates in excess of the Break-Up Fee and the expense reimbursement shall be deemed, and is hereby, fully waived, released and forever discharged.  No person, other than the Stalking Horse, shall be entitled to any expense reimbursement, break-up fee, "topping," termination or other similar fee or payment in connection with the Auction.

1.      The Bid Deadline is **February 1, 2023 at 4:00 p.m.** (prevailing central time).  All Potential Bidders are required to provide copies of their bids and ensure the bid is received by the following parties on or before the Bid Deadline:

    a.  Counsel for Debtor, Ferguson Braswell Fraser Kubasta PC, Attn: Rachael L. Smiley: rsmiley@fbfk.law

    b.  Debtor's Chief Restructuring Officer and Financial Advisor, B. Riley Advisory Services, Attn: Joseph V. Pegnia: jpegnia@brileyfin.com

    c.  Counsel for the Bond Trustee, Faegre Drinker Biddle & Reath LLP, Attn.: Laura E. Appleby: laura.appleby@faegredrinker.com; Vince Slusher; vince.slusher@faegredrinker.com; and Kristen Perry: kristen.perry@faegredrinker.com

    d.  Counsel for the DIP Lender, Polsinelli PC: Attn: David Gordon: DGordon@Polsinelli.com; Mark Joachim: MJoachim@Polsinelli.com; Meredyth Kippes: mkippes@polsinelli.com; and Liz Boydston:

LBoydston@Polsinelli.com

    e.   The Office of the United States Trustee, 1100 Commerce Street, Room 976, Dallas, TX 75242-1699; Attn: Elizabeth Young: Elizabeth.A.Young@usdoj.gov

(collectively, the "**Notice Parties**").

2.    Any Potential Bidder who does not submit a bid by the Bid Deadline will not be authorized or allowed to submit a bid after the Bid Deadline or participate in the Auction.

3.    The Auction, if necessary, under the Bid Procedures, will be held on February 6, 2023, at 10:00 a.m. (prevailing central time) (a) at the offices of Ferguson Braswell Fraser Kubasta, PC, 2500 Dallas Parkway, Suite 600, Plano, Texas 75093 and/or (b) via a virtual platform, such as Zoom, as the Debtor may designate.  The Debtor shall provide notice of any change to the Auction location and, if via a virtual platform, the credentials required to access such platform, to all Qualified Bidders no later than forty-eight (48) hours prior to the Auction Date.

4.    A hearing (the "**Sale Hearing**") at which the Debtor shall seek approval of the Successful Bidder(s), shall be held before the Court **on February 7, 2023 at 9:30 a.m., prevailing central time,** at the Eldon B. Mahon U.S. Courthouse, Room 128, 501 W. 10th St., Fort Worth, Texas 76102.

5.    Objections to the Sale shall be in writing, state the basis of such objection with specificity, and be filed with the Court and served on the Notice Parties so as to be received on or before February 2, 2023 at 4:00 p.m. (prevailing central time).  The failure of any party to timely file its objection shall be an absolute bar to the assertion at the Sale Hearing (or thereafter) of any objection to the consummation and performance of the Sale.

6.    The form and manner of service of the Cure and Possible Assumption and Assignment Notice is approved in all respects.  The Debtor shall serve the Cure and Possible

Assumption and Assignment Notice on all Parties of Interest within two (2) days of the selection

of the Successful Bidder(s).  Service of the Cure and Possible Assumption and Assignment Notice,

as set forth in the Motion, constitutes sufficient notice of the procedures related to the possible

assumption and assignment of executory contracts as set forth in this Order and the Motion.

7.      Unless an objection to the Cure and Possible Assumption and Assignment Notice

has been filed within fourteen (14) days of the date of the Cure and Possible Assignment and

Assumption Notice, all counterparties to any executory contract (other than resident contracts or

resident leases) who received actual or constructive notice of the Cure and Possible Assumption

and Assignment Notice shall be deemed to have waived and released any right to object to the

assumption and assignment of such executory contract or to object to the cure amount and will

have been deemed to have otherwise consented to the assumption and assignment of such

executory contract to the Successful Bidder(s). If an objection to the Cure and Possible Assumption

and Assignment Notice is received within fourteen (14) days of the date of the Cure and Possible

Assumption and Assignment Notice, such objection will be resolved at the Sale Hearing. Such

objection must set forth the cure amount or other obligation that the objecting party asserts is due,

the specific types and dates of the alleged default(s), pecuniary losses, and conditions to the

assignment and the support thereof, if any.

8.      After the conclusion of the Auction, the Debtor shall file with the Court and inform

any party who received a Cure and Possible Assumption and Assignment Notice with further

notice identifying the applicable Successful Bidder(s), identifying which contracts will be assumed

and assigned, and providing such party the Successful Bidder(s)' assurance of future performance.

If the counterparty objects to the adequate assurance of future performance, such party must file

an objection with the Court and serve the Contract Objection on the Notice Parties prior to the Sale

Hearing.  If a counterparty does not timely file and serve a Contract Objection, that party will be forever barred from objecting to the adequacy of the assurance, assumption, or assignment of the contract to the Successful Bidder.  Any objections to the adequacy of the assurance or other objections to the possible assumption and assignment of the executory contract shall be decided at the Sale Hearing.

9.      Notwithstanding any provision in any executory contract entered into by the Debtor and pursuant to 11 U.S.C. Section 365(f), any provision that prohibits or limits the ability of the Debtor to assign such contract to a third-party is null and void and shall have no force and effect.

10.      The Debtor is authorized and empowered to take such steps, expend such sums of money, and do such other things as may be necessary to implement and effect the terms and requirements established and relief granted in this Order.

11.      To the extent anything contained in this Order conflicts with the Motion to Sell, this Order and the provisions of the Bid Procedures shall govern and control.

12.      Notwithstanding the applicability of Bankruptcy Rule 6004(h), this Order shall take effect immediately upon its entry

13.      This Court retains exclusive jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order.

###END OF ORDER###

**Exhibit A to Order**

**<u>Bid Procedures</u>**

# LEADING LIFE SENIOR LIVING, INC.

## BID PROCEDURES

Set forth below are the bid procedures (the "**Bid Procedures**") to be employed with respect to the sale of the Assets (defined below) of Leading Life Senior Living, Inc. (the "**Debtor**"), as debtor in possession in the chapter 11 case (the "**Bankruptcy Case**") pending in the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**"), Case No. 22-42784.

The Debtor proposes to sell the Assets as defined in the Stalking Horse APA (hereinafter defined) as a going concern (the "**Sale**"). The Sale is based upon a competitive bidding process, as set forth herein, and subject to approval by the Bankruptcy Court pursuant to section 363 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

### Due Diligence Participation Requirements

Parties interested in conducting due diligence should contact the Debtor's Financial Advisor, GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services ("**B. Riley**"), as follows:

B.  Riley Advisory Services:

Joseph Pegnia, 470-346-6833, jpegnia@brileyfin.com

Any person desiring to submit a bid for the Assets will be required to deliver to the Debtor an executed confidentiality agreement in form and substance satisfactory to the Debtor. The Debtor and its professionals will afford any person who executes a confidentiality agreement (a "**Potential Bidder**") such due diligence access or additional information as the Debtor, in its business judgment, determines to be reasonable and appropriate. Notwithstanding the foregoing, the Debtor shall have the right, in its sole discretion to require satisfactory evidence of any Potential Bidder's available funds for or firm commitment for sufficient financing to consummate an acquisition, prior to granting said Potential Bidder access to conduct due diligence. Additional due diligence materials will not be provided after the Bid Deadline (as defined below).

Notwithstanding the foregoing, neither the Debtor nor its professionals are required to provide confidential, business sensitive, or proprietary information to any Potential Bidder if the Debtor reasonably believes, in the Debtor's exercise of its reasonable business judgment after consultation with its advisors and with the DIP Lender and the Bond Trustee, that (i) such disclosure would be detrimental to the interests of the Debtor's estate (the "**Estate**"), or (ii) such Potential Bidder does not intend in good faith, or have the capacity, to consummate its bid.

Each Potential Bidder shall be deemed to have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to due diligence, the submission of its bid, the Bid Procedures, the Auction and the Sale.

**Selection of a Stalking Horse Bidder**

Pursuant to the order approving these Bid Procedures (the "**Bid Procedures Order**"), and as set forth below, the Debtor is authorized to enter into: (i) the definitive asset purchase agreement (the "**Stalking Horse APA**") with Berkeley Alternative Income Fund I, LLC together with its to-be-formed subsidiaries (collectively, "**BAIF**" or the "**Stalking Horse**"); and (ii) operations transfer agreements for each facility and ancillary business line with BAIF's designated operators (collectively, the "**Stalking Horse OTAs**", and together with the Stalking Horse APA, the "**Stalking Horse Definitive Agreements**"). The Stalking Horse APA provides for the sale of substantially all of the Assets to the Stalking Horse for a purchase price of $5,000,000, plus the assumption of Assumed Liabilities, all as set forth more fully therein.

As a component of the Stalking Horse APA, the Debtor provided a break-up fee of 4% of the cash purchase price plus actual expenses in an amount not to exceed $200,000 (collectively the "**Break-Up Fee**"), a minimum bid increment for other bidders to submit competing bids, and other buyer protections (collectively, the "**Bid Protections**") requested by the Stalking Horse.

The Stalking Horse must also comply with all other applicable Participation Requirements (as defined below).

**Bid Deadline**

The deadline for any Potential Bidders to submit bids intending to compete with the Stalking Horse Definitive Agreements, if any, shall be February 1, 2023 at 4:00 p.m. (prevailing Central Time) (the "**Bid Deadline**"). Such bids must be received on or before the Bid Deadline by the following parties (collectively, the "**Notice Parties**"):

a. Counsel for Debtor, Ferguson Braswell Fraser Kubasta PC, Attn: Rachael L. Smiley: rsmiley@fbfk.law

b. Debtor's Chief Restructuring Officer and Financial Advisor, B. Riley Advisory Services, Attn: Joseph V. Pegnia: jpegnia@brileyfin.com

c. Counsel for the Bond Trustee, Faegre Drinker Biddle & Reath LLP, Attn.: Laura E. Appleby: laura.appleby@faegredrinker.com; Vince Slusher; vince.slusher@faegredrinker.com; and Kristen Perry: kristen.perry@faegredrinker.com

d. Counsel for the DIP Lender, Polsinelli PC: Attn: David Gordon: DGordon@Polsinelli.com; Mark Joachim: MJoachim@Polsinelli.com; Meredyth Kippes: mkippes@polsinelli.com; and Liz Boydston: LBoydston@Polsinelli.com

e. The Office of the United States Trustee, 1100 Commerce Street, Room 976, Dallas, TX 75242-1699; Attn: Elizabeth Young: Elizabeth.A.Young@usdoj.gov

## Bid Requirements

To be eligible to participate in the Auction (as such term is defined below), each bid and each Potential Bidder submitting such a bid must conform to the following requirements (collectively, the "**Participation Requirements**"):

1.      In the event a bidder offers to purchase substantially all of Debtor's Assets, the bid shall be on terms no less favorable to the Debtor than those set forth in the Stalking Horse APA, including without limitation, a value to the Debtor, in the Debtor's exercise of its reasonable business judgment after consultation with its advisors, any committee appointed in the Bankruptcy Case (as defined below), and the Bond Trustee, that is greater than or equal to the value offered under the Stalking Horse APA, plus at least (i) the amount of the Break-Up Fee and (ii) $100,000 (the "**Minimum Bid Increment**," and together with the Break-Up Fee, the "**Minimum Qualified Bid**");

2.      In the event a bidder offers to purchase less than substantially all of the Debtor's Assets, then any such bid shall be in conformance with the remainder of the Participation Requirements set forth below;

3.      Include a redlined copy of the Stalking Horse APA attached to the Sale Motion to show any proposed amendments thereto (the "**Modified APA**") and a clean and executed Modified APA;

4.      To the extent applicable, redlined copies of the Stalking Horse OTAs contained in the data room to show any proposed amendments thereto (the "**Modified OTAs**") and clean versions of the Modified OTAs;

5.      Include a statement that there are no conditions precedent to the Potential Bidder's ability to enter into the definitive agreements, including that there are no financing contingencies or due diligence contingencies to the bid, and that all necessary internal and shareholder/member approvals have been obtained prior to the bid;

6.      State that such offer is binding and irrevocable until the approval of the Successful Bid(s) by the Court unless designated as the Back-Up Bid (each, as defined below), provided that if such offer is selected as a Successful Bid or a Back-Up Bid, then the offer shall remain binding and irrevocable until the closing of the transaction contemplated by the Successful Bid(s);

7.      Disclose the identity of each entity that will be bidding or otherwise participating in connection with such bid;

8.      Include the names and contact information of members of the Potential Bidder who will be available to answer questions regarding the offer, including advisors and related parties;

9.      Include a good-faith deposit in immediately available funds of at least 5 percent (5%) of the Purchase Price set forth in the bid ("**Earnest Money Deposit**");

10.  Provide satisfactory written evidence of available funds or a firm commitment for financing sufficient to consummate the Sale;

11.  Provide information on the Potential Bidder's prior experience owning / operating comparable facilities or such other applicable experience to permit the Debtor to evaluate the Potential Bidder's ability to operate the facilities and assume each Assumed Contract;

12.  Represent and warrant that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the Debtor's business and the Assets prior to submitting its bid and a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the Assets in making its bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Debtor's business or the Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Modified APA, ultimately accepted and executed by the Debtor; and

13.  Acknowledge that the Potential Bidder is not entitled to any of the Bid Protections.

14.  Non-cash consideration proposed by any Potential Bidder will only be considered in the sole discretion and to the extent reasonably acceptable to the DIP Lender and the Bond Trustee.

The Debtor, following consultation with the Bond Trustee and any statutorily appointed committee (a "**Committee**"), shall determine whether bids submitted by Potential Bidders meet the Participation Requirements.

Bids are not required to adopt the business structure as set forth in the Stalking Horse APA and may provide for either a for-profit or not-for-profit entity as the operator of the facilities. Bids must be for purchase of both of the Debtor's facilities.

### Qualified Bidders and Bids

Potential Bidders who have satisfied the Participation Requirements in the Debtor's judgment, will be deemed "Qualified Bidders." Bids that contain all bid requirements, as determined by the Debtor, in consultation with the Bond Trustee and the Committee, if any, will be deemed "Qualified Bids." The Stalking Horse shall be entitled to credit bid the amount of the outstanding balance due under the DIP Credit Agreement[1] as of the date of closing of the Sale.

The Debtor will advise each Potential Bidder whether they are deemed to be a Qualified Bidder and whether their bid is a Qualified Bid before the Auction. The Stalking Horse is deemed

---

[1] As defined in the *Interim Order Approving the Debtor's Emergency Motion for Entry of Interim, and Final Orders (A) Authorizing the Debtor to Obtain Post-petition Financing; (B) Authorizing the Use of Cash Collateral;(C) Granting Adequate Protection to UMB Bank, N.A. as Indenture Trustee; and (D) Scheduling a Final Hearing* [Docket No. 37].

a Qualified Bidder and the Stalking Horse Bid is a Qualified Bid in all respects. The Debtor will provide copies of the Qualified Bids to the Bond Trustee and the Committee.

The Debtor reserves the right to waive noncompliance with any one or more of the Participation Requirements to be a Qualified Bid (the Stalking Horse's right to the Break-Up Fee may not be waived) and deem an otherwise not Qualified Bid to be a Qualified Bid if it reasonably determines, in its business judgment, after consultation with the Bond Trustee, the Committee, and its retained professionals, that such waiver is consistent with its fiduciary duties.

All Qualified Bidders, including the Stalking Horse, shall be deemed to have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to due diligence, the submission of its bid, the Bid Procedures, the Auction and the Sale.

<strong>Auction Participation</strong>

Unless otherwise agreed to by the Debtor, only the Debtor, Qualified Bidders, members of the Committee, the Bond Trustee, and each of the foregoing's legal or financial professionals are eligible to attend or participate at the Auction. Subject to the other provisions of these Bid Procedures, if the Debtor does not receive any Qualified Bids other than the Stalking Horse Bid or if no Qualified Bidder other than the Stalking Horse has indicated its intent to participate in the Auction, the Debtor will not hold an Auction, and the Stalking Horse will be named the Successful Bidder (as defined below).

The Bond Trustee shall be entitled to credit bid for the Assets pursuant to Section 363(k), or otherwise, during or at the conclusion of the Auction only if the Stalking Horse APA is no longer a Qualified Bid at any point after the Bankruptcy Case is filed.

<strong>Auction</strong>

If more than one Qualified Bid is received, the Debtor will conduct an auction (the "**Auction**") for the sale of substantially all the Assets. Each Qualified Bidder participating at the Auction will be required to confirm on the record that it has not engaged in any collusion with respect to the bidding or the Sale.

The Auction, if required, shall take place at 10:00 a.m. (prevailing Central Time) on February 6, 2023, (a) at the offices of Ferguson Braswell Fraser Kubasta PC, 2500 Dallas Parkway, Suite 600, Plano, Texas 75093 and/or (b) via a virtual platform, such as Zoom, as the Debtor designates. No later than forty-eight (48) hours prior to the Auction Date, the Debtor shall provide notice of any change to the Auction location and, if via a virtual platform, the credentials required to access such platform, to all Qualified Bidders.

Before the Auction, the Debtor must provide copies of the Qualified Bid that the Debtor, in consultation with Bond Trustee and the Committee, believe is the highest or otherwise best offer to all Qualified Bidders who are eligible to attend and participate in the Auction.

All Qualified Bidders who have submitted a Qualified Bid shall be entitled to be present for all Subsequent Bids with the understanding that the identity of each bidder shall be disclosed to all other bidders and that the material terms of each Subsequent Bid (including any Subsequent Bid by any bidder) will be fully disclosed to all other bidders.

Bidding at the Auction shall begin with the highest or otherwise best Qualified Bid. At the Auction, only the Stalking Horse and other Qualified Bidders will be permitted to increase and/or improve their bids The bidding shall be in minimum increments of at least (i) the amount of the Break-Up Fee and (ii) $100,000 higher than the previous bid or bids (after giving effect to the minimum required for each bid to be determined to be a Qualified Bid). Subject to modification of the bidding procedures as set forth herein, the Auction shall continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and written confirmation of the then-existing highest bid or bids. The Auction will be conducted openly, and the Auction Participants will be informed of the terms of the highest and best previous bid. Otherwise, the Debtor may conduct the Auction in any manner it reasonably determines, in its business judgment, after consultation with the Bond Trustee and the Committee, will achieve the maximum value for the Assets.

## Closing the Auction

The Auction shall continue until there is one offer or a combination of offers that the Debtor determines, following consultation with the Bond Trustee and the Committee, subject to Bankruptcy Court approval, is the highest and best offer(s) from among the Qualified Bidders (including the Stalking Horse) submitted at the Auction (the "**Successful Bid(s)**"). The Qualified Bidder(s) submitting such Successful Bid(s) shall become the "Successful Bidder" and shall have such rights and responsibilities of a purchaser, as set forth in the Stalking Horse APA or Modified APA, as applicable. Immediately prior to the conclusion of the Auction, the Debtor shall, in consultation with the Bond Trustee and the Committee: (1) review each bid made at the Auction on the basis of financial and contractual terms and such other factors as may be relevant to the sale process, including the risks and timing associating with consummating each bid, the risks associated with any non-cash consideration in such bid, the ability of a Qualified Bidder to timely obtain any required regulatory approvals and any other factors deemed relevant by the Debtor in its reasonable discretion; (2) identify the Successful Bid(s); and (3) notify all Qualified Bidders at the Auction, prior to its conclusion, of the name or names of the Successful Bidder(s) and the amount and other material terms of the Successful Bid(s).

All Qualified Bidders attending the Auction shall agree to remain ready, willing, and able to close the Sale under the terms of their last Qualified Bid submitted at such Auction as a back-up bidder. The Debtor shall, following consultation with the Bond Trustee and the Committee, select a back-up bid (the "**Back-Up Bid**") for the Assets from among the Qualified Bidders (the "**Back- Up Bidder**"), which shall remain open and irrevocable until one (1) business day after the closing of the Sale with the Successful Bidder(s). In the event that the Successful Bidder fails to close the transaction contemplated by the Successful Bidder, for any reason, the Debtor may, following consultation with the Bond Trustee and the Committee, elect to regard the Back-Up Bid as the highest and best bid for the Assets, and the Debtor will be authorized to consummate the

transaction contemplated by the Back-Up Bid without further order of the Bankruptcy Court, and the Back-Up Bidder shall close on the Sale in accordance with such Back-Up Bid.

The Successful Bidder(s) and the Back-Up Bidder(s) shall be deemed to have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to due diligence, the submission of its bid, the Bid Procedures, the Auction and the Sale.

## Assumption of Executory Contracts and Unexpired Leases

The Stalking Horse APA and Modified APA must designate which executory contracts and unexpired leases are to be assumed and assigned (the "**Assigned Contracts**"). In all circumstances, the Successful Bidder(s) shall be responsible for all cure amounts relating to the Assigned Contracts under section 365 of the Bankruptcy Code.

## Reservation of Rights

THE DEBTOR RESERVES ITS RIGHTS TO (I) MODIFY THESE BID PROCEDURES IN ANY MANNER, IN CONSULTATION WITH THE BOND TRUSTEE AND THE COMMITTEE, THAT WILL BEST PROMOTE THE GOALS OF THE BIDDING PROCESS AND TO IMPOSE, AT OR PRIOR TO THE AUCTION, ADDITIONAL OR DIFFERENT CUSTOMARY TERMS AND CONDITIONS ON THE SALE OF THE ASSETS, INCLUDING, WITHOUT LIMITATION, MODIFYING THE REQUIREMENTS FOR A QUALIFIED BID (EXCEPT AS TO THE STALKING HORSE BREAK-UP FEE AS SET FORTH HEREIN) (II) EXTENDING THE DEADLINES SET FORTH IN THESE BID PROCEDURES, (III) ADJOURNING THE AUCTION AT OR PRIOR TO THE AUCTION AND/OR ADJOURNING THE SALE HEARING PRIOR TO SUCH HEARING OR IN OPEN COURT WITHOUT FURTHER NOTICE, AND (IV) REJECTING ANY OR ALL QUALIFIED BIDS IF, IN THE DEBTOR'S REASONABLE, GOOD-FAITH BUSINESS JUDGMENT DETERMINES THAT SUCH QUALIFIED BID IS (A) INADEQUATE OR INSUFFICIENT, (B) NOT IN CONFORMITY WITH THE REQUIREMENTS OF THE BANKRUPTCY CODE OR ANY RELATED RULES OR THE TERMS SET FORTH HEREIN, OR (C) CONTRARY TO THE BEST INTERESTS OF THE DEBTOR. THE DEBTOR RESERVES THE RIGHT, AT ANY TIME, FOR ANY REASON AND IN ITS REASONABLE, GOOD-FAITH BUSINESS JUDGMENT IN CONSULTATION WITH THE BOND TRUSTEE AND THE COMMITTEE, TO DECLINE TO PURSUE THE SALE AND TO WITHDRAW ANY MOTION FILED IN THE COURT SEEKING TO APPROVE THE SALE.

**Exhibit B to Order**

**Proposed Auction and Sale Notice**

Rachael L. Smiley (State Bar. No. 24066158)
Alex Campbell (State Bar No. 24095536)
Kevin Barnett (State Bar No. 24103834)
**FERGUSON BRASWELL FRASER KUBASTA PC**
2500 Dallas Parkway, Suite 600
Plano, TX 75093
Phone: 972-378-9111
Fax:   972-378-9115
rsmiley@fbfk.law
acampbell@fbfk.law
kbarnett@fbfk.law

**PROPOSED COUNSEL FOR DEBTOR IN POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re | § | **Chapter 11** |
| | § | |
| **LEADING LIFE SENIOR LIVING, INC.,** | § | **Case No. 22-42784-MXM** |
| | § | |
| Debtor. | § | |
| | § | |

## <u>NOTICE OF BID PROCEDURES, AUCTION, AND SALE HEARING</u>

**A HEARING DATE ON THE SALE OF THE DEBTOR'S ASSETS IS SET FOR FEBRUARY 7, 2023 AT 9:30 A.M. (CST), WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF. NO OBJECTION TO SUCH SALE WILL BE CONSIDERED UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT THE ELDON D. MAHON U.S. COURTHOUSE, 501 W. 10th ST, FORT WORTH, TEXAS 76102, AT LEAST FIVE (5) DAYS IN ADVANCE OF SUCH HEARING DATE.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED, A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

PLEASE TAKE NOTICE that on November 18, 2022, Leading Life Senior Living, Inc. (the "**Debtor**") filed a voluntary petition for relief under chapter 11, title 11 of the United States Code with the United States Bankruptcy Court for the Northern District of Texas (the "**Court**").

PLEASE TAKE FURTHER NOTICE that on December 2, 2022, the Debtor filed its *Emergency Motion for an Order (I) Approving the Sale of Substantially All of the Debtor's Assets; (II) Approving the Bid Procedures and Protections in Connection with the Sale of Substantially All of the Debtor's Assets; Approving the Form and Manner of Assumption and Assignment of Executory Contracts; and (IV) Granting Related Relief* (the "**Motion**") seeking, among other things, (i) approval of certain bid procedures (the "**Bid Procedures**") and bid protections with respect to the sale of substantially all of the Debtor's assets (the "**Assets**"); (ii) authorization to sell the Assets free and clear of all liens, claims, interests, and encumbrances; and (iii) authorization to assume and assign certain executory contracts of the Debtor.

PLEASE TAKE FURTHER NOTICE that on _____, 2022, the Court entered its *Order Granting the Emergency Motion for an Order (I) Approving the Sale of Substantially All of the Debtor's Assets; (II) Approving the Bid Procedures and Protections in Connection with the Sale of Substantially All of the Debtor's Assets; Approving the Form and Manner of Assumption and Assignment of Executory Contracts; and (IV) Granting Related Relief* (the "**Bid Procedures Order**"), which among other things, approved the Bid Procedures and sets the following deadlines and dates:

**Bid Deadline:   February 1, 2023 at 4:00 p.m. (CST)**

**Auction:          February 6, 2023 at 10:00 a.m. (CST) (if necessary)**

A copy of the Bid Procedures is enclosed.

PLEASE TAKE FURTHER NOTICE that pursuant to the Bid Procedures Order, a hearing to approve the sale in accordance with the Bid Procedures will be held on February 7, 2023, at 9:30 a.m., prevailing central time, at the Eldon D. Mahon Courthouse, 501 West 10th Street, Courtroom Number 128, Fort Worth, Texas 76102. Any objection to the terms of the sale must be filed with the Court so as to be received no later than five (5) days prior to the hearing by the following parties: (i) counsel for the Debtor, Ferguson Braswell Fraser Kubasta PC, Attn: Rachael L. Smiley (rsmiley@fbfk.law), (ii) the Debtor's Chief Restructuring Officer, B Riley Advisory Services, Attn: Joseph V. Pegnia (jpegnia@brileyfin.com), (iii) counsel for UMB Bank, N.A., as Bond Trustee, Faegre Drinker Biddle & Reath LLP, Attn. Laura E. Appleby (laura.appleby@faegredrinker.com), Vince Slusher (vince.slusher@faegredrinker.com), and Kristen Perry (kristen.perry@faegredrinker.com); (iv) counsel for the DIP Lender, Polsinelli PC, Attn : David Gordon: DGordon@Polsinelli.com; Mark Joachim: MJoachim@Polsinelli.com; Meredyth Kippes: mkippes@polsinelli.com; and Liz Boydston: LBoydston@Polsinelli.com: and

(v) the Office of the United States Trustee, 1100 Commerce St., Room 976, Dallas, Texas 75242-1699, Attn. Elizabeth A. Young (Elizabeth.A.Young@usdoj.gov).

**PLEASE TAKE FURTHER NOTICE** that a copy of the Bid Procedures Order, the Bid Procedures, and any other document filed in the Debtor's Bankruptcy Case may be (i) inspected in the offices of the Clerk of Court during normal business hours; (ii) downloaded from the Court's website at http://www.txnb.uscourts.gov/ (with a prior registration with PACER and payment of applicable fees), and (iii) downloaded free of charge from the Debtor's claims and noticing agent, Omni Agent Solutions at Leading Life Senior Living, Inc.: Home (omniagentsolutions.com). Requests may also be made to Debtor's counsel using the below contact information.

Dated: _____          Respectfully Submitted,

**FERGUSON BRASWELL
FRASER KUBASTA PC**

By: _/s/_____
Rachael L. Smiley (State Bar. No.24066158)
Alex Campbell (State Bar No. 24095536)
Kevin Barnett (State Bar No. 24103834)
2500 Dallas Parkway, Suite 600
Plano, TX 75093
Phone: 972-378-9111
Fax:    972-378-9115
rsmiley@fbfk.law
acampbell@fbfk.law
kbarnett@fbfk.law

**PROPOSED COUNSEL FOR
DEBTOR IN POSSESSION**

**Exhibit C to Order**

<u>**Cure and Possible Assumption and Assignment Notice**</u>

Rachael L. Smiley (State Bar. No. 24066158)
Alex Campbell (State Bar No. 24095536)
Kevin Barnett (State Bar No. 24103834)
**FERGUSON BRASWELL FRASER KUBASTA PC**
2500 Dallas Parkway, Suite 600
Plano, TX 75093
Phone: 972-378-9111
Fax:   972-378-9115
rsmiley@fbfk.law
acampbell@fbfk.law
kbarnett@fbfk.law

**PROPOSED COUNSEL FOR DEBTOR IN POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| In re | § | Chapter 11 |
|  | § |  |
| **LEADING LIFE SENIOR LIVING, INC.,** | § | Case No. 22-42784-MXM |
|  | § |  |
| Debtor. | § |  |
|  | § |  |

### NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS

**A HEARING DATE ON THE SALE OF THE DEBTOR'S ASSETS IS SET FOR FEBRUARY 7, 2023 AT 9:30 A.M. (CST), WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF. NO OBJECTION TO SUCH SALE WILL BE CONSIDERED UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT THE ELDON D. MAHON U.S. COURTHOUSE, 501 W. 10th ST, FORT WORTH, TEXAS 76102, AT LEAST FIVE (5) DAYS IN ADVANCE OF SUCH HEARING DATE.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED, A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

PLEASE TAKE NOTICE that on November 18, 2022, Leading Life Senior Living, Inc. (the "**Debtor**") filed a voluntary petition for relief under chapter 11, title 11 of the United States Code with the United States Bankruptcy Court for the Northern District of Texas (the "**Court**").

PLEASE TAKE FURTHER NOTICE that on December 2, 2022, the Debtor filed its *Emergency Motion for an Order (I) Approving the Sale of Substantially All of the Debtor's Assets; (II) Approving the Bid Procedures and Protections in Connection with the Sale of Substantially All of the Debtor's Assets; Approving the Form and Manner of Assumption and Assignment of Executory Contracts; and (IV) Granting Related Relief* (the "**Motion**") seeking, among other things, (i) approval of certain bid procedures (the "**Bid Procedures**") and bid protections with respect to the sale of substantially all of the Debtor's assets (the "**Assets**"); (ii) authorization to sell the Assets free and clear of all liens, claims, interests, and encumbrances; and (iii) authorization to assume and assign certain executory contracts of the Debtor.

PLEASE TAKE FURTHER NOTICE that on ___, 2022, the Court entered its *Order Granting the Emergency Motion for an Order (I) Approving the Sale of Substantially All of the Debtor's Assets; (II) Approving the Bid Procedures and Protections in Connection with the Sale of Substantially All of the Debtor's Assets; Approving the Form and Manner of Assumption and Assignment of Executory Contracts; and (IV) Granting Related Relief* (the "**Bid Procedures Order**"), which among other things, approved the Bid Procedures and the procedures for the assumption and assignment of the Debtor's executory contracts. A copy of the Bid Procedures Order is enclosed as Exhibit A.

PLEASE TAKE FURTHER NOTICE that the Debtor has set forth on Exhibit B, attached hereto, the amounts due and owing, if any, under the executory contract (excluding resident contracts and resident leases) through the date hereof (the "**Cure Amounts**"). The Bankruptcy Code requires that the Cure Amounts (which include any amounts owing on account of the Debtor's prepetition obligation under the executory contracts) be paid in full to the parties owed such amounts upon the Debtor's assumption of such contracts.

PLEASE TAKE FURTHER NOTICE THAT ANY PARTY SEEKING TO ASSERT AN OBJECTION TO THE ASSUMPTION BY THE DEBTOR AND ASSIGNMENT OF SUCH CONTRACT TO THE SUCCESSFUL BIDDER OF SUCH CONTRACT, INCLUDING THE VALIDITY OF ANY CURE AMOUNT AS DETERMINED BY THE DEBTOR OR TO OTHERWISE ASSERT THAT ANY OTHER AMOUNTS, DEFAULTS, CONDITIONS, OR OTHER LOSSES MUST SET FORTH THE BASIS OF THEIR OBJECTION WITH RESPECT TO SUCH CONTRACT SO THAT SUCH OBJECTION AND MUST SERVE SUCH OBJECTION (the "**Objection**") SO THAT IT IS ACTUALLY RECEIVED ON OR BEFORE FOURTEEN (14) DAYS FOLLOWING SERVICE OF THIS NOTICE (the "**Objection Deadline**") by: (i) counsel for the Debtor, Ferguson Braswell Fraser Kubasta PC, Attn: Rachael L. Smiley (rsmiley@fbfk.law), (ii) the Debtor's Chief Restructuring Officer, B Riley Advisory Services, Attn: Joseph V. Pegnia (jpegnia@brileyfin.com), (iii) counsel for UMB Bank, N.A., as Bond Trustee, Faegre Drinker Biddle & Reath LLP, Attn. Laura E. Appleby (laura.appleby@faegredrinker.com), Vince Slusher (vince.slusher@faegredrinker.com), and Kristen Perry (kristen.perry@faegredrinker.com); (iv) counsel for the DIP Lender, Polsinelli

PC, Attn : David Gordon: DGordon@Polsinelli.com; Mark Joachim: MJoachim@Polsinelli.com; Meredyth Kippes: mkippes@polsinelli.com; and Liz Boydston: LBoydston@Polsinelli.com: and (v) the Office of the United States Trustee, 1100 Commerce St., Room 976, Dallas, Texas 75242-1699, Attn. Elizabeth A. Young (Elizabeth.A.Young@usdoj.gov).

**PLEASE TAKE FURTHER NOTICE THAT UNLESS AN OBJECTION IS FILED AND SERVED BY A COUNTERPARTY TO THE EXECUTORY CONTRACT BY THE OBJECTION DEADLINE, ALL PARTIES WHO HAVE RECEIVED ACTUAL OR CONSTRUCTIVE NOTICE HEREOF SHALL BE DEEMED TO HAVE WAIVED AND RELEASED ANY RIGHT TO ASSERT AN ASSUMPTION OBJECTION AND TO HAVE OTHERWISE CONSENTED TO ASSUMPTION AND ASSIGNMENT OF SUCH CONTRACT AND SHALL BE FOREVER BARRED AND ESTOPPED FROM ASSERTING OR CLAIMING AGAINST THE DEBTOR, THE SUCCESSFUL BIDDER(S), OR ANY OTHER ASSIGNEE OF THE RELEVANT ASSUMED AND ASSIGNED CONTRACT THAT ANY ADDITIONAL AMOUNTS ARE DUE OR DEFAULTS EXIST, OR CONDITIONS TO THE ASSUMPTION OR ASSIGNMENT MUST BE SATISFIED.**

**PLEASE TAKE FURTHER NOTICE** that the Objection must set forth the cure amount or other obligation that the objecting party asserts is due, the specific types and dates of the alleged defaults, pecuniary losses, and conditions to the assignment and support, if any.

**PLEASE TAKE FURTHER NOTICE** that you will be notified before the hearing regarding whether the Debtor intends to assume the executory contract it has with you. If the Debtor elects to assume the executory contract, you will also be notified of the applicable Successful Bidder and their assurance of future performance. If you object to the adequate assurance of future performance, you must file an objection with the Court and serve the Objection on the parties listed above prior to the hearing date referenced above.

**PLEASE TAKE FURTHER NOTICE** that if any objections are timely received and the Debtor and/or Successful Bidder(s) is unable to resolve such objection, the proposed assumption and assignment which is the subject of the Objection shall be considered at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that if you agree with the Cure Amount and do not otherwise object to the Debtor's assumption and assignment of the contract, you do not need to take any further action.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Bid Procedures Order, the Bid Procedures, and any other document filed in the Debtor's Bankruptcy Case may be (i) inspected in the offices of the Clerk of Court during normal business hours; (ii) downloaded from the Court's website at http://www.txnb.suscourts.gov/ (with a prior registration with PACER and payment of applicable fees), and (iii) downloaded free of charge at from the Debtor's claims and noticing agent, Omni Agent Solutions at Leading Life Senior Living, Inc.: Home (omniagentsolutions.com). Requests may also be made to Debtor's counsel using the below contact information.

Dated: _____

Respectfully Submitted,

**FERGUSON BRASWELL
FRASER KUBASTA PC**

By: /s/_____
Rachael L. Smiley (State Bar. No.24066158)
Alex Campbell (State Bar No. 24095536)
Kevin Barnett (State Bar No. 24103834)
2500 Dallas Parkway, Suite 600
Plano, TX 75093
Phone: 972-378-9111
Fax:    972-378-9115
rsmiley@fbfk.law
acampbell@fbfk.law
kbarnett@fbfk.law

**PROPOSED COUNSEL FOR
DEBTOR IN POSSESSION**

**Exhibit D to Order**

**Form of Non-Disclosure Agreement**

December 14, 2022

**PRIVATE AND CONFIDENTIAL**

**Via email to: --------------**
_____
_____
_____

Re: *In re Leading Life Senior Living, Inc., Case No. 22- 42784 (MXM) (Bankr. N.D. Tex.)*

Ladies and Gentlemen:

You have expressed interest in a potential transaction (a "***Transaction***") with *Leading Life Senior Living, Inc.* a debtor in possession (the "***Debtor***" or the "***Company***") in the above-referenced chapter 11 case (the "***Case***"). In connection with a potential Transaction, and for no other purposes, the Company is prepared to make available to you certain information concerning the business, operations and assets of the Company, on the terms set forth in this letter agreement (this "***Agreement***").

As a condition to such information being furnished to you and your directors, officers, employees, agents or advisors (including without limitation, your attorneys, accountants, bankers and financial advisors) (collectively, "***Representatives***"), you agree to treat any information concerning the Company (whether prepared by the Company, its advisors or otherwise and irrespective of the form of communication) which is furnished to you or to your Representatives by or on behalf of the Company (herein collectively referred to as the "***Evaluation Material***") in accordance with the provisions of this Agreement.

The term "***Evaluation Material***" shall mean any data, reports, records or materials or other information which relates to past, present or future business activities of the Company or its customers that is (i) not publicly available as of the date of this Agreement or thereafter, (ii) not already in your possession at the time of disclosure, and (iii) not independently and rightfully disclosed to you by a third party who did not acquire such information directly or indirectly from the Company on a confidential basis.

You hereby agree that you and your Representatives shall use the Evaluation Material solely for the purpose of evaluating a possible Transaction between you and the Company. You further agree that the Evaluation Material will be kept confidential and that you and your Representatives will not disclose any of the Evaluation Material in any manner whatsoever; *provided, however,* that (i) you may make any disclosure of such information to which the Company gives its prior written consent and (ii) any such information may be disclosed to your Representatives who need to know such information for the purpose of evaluating a possible Transaction with the Company and who agree to keep such information confidential pursuant to the terms of this Agreement. You shall be responsible for any breach of this Agreement by any of your Representatives by virtue of any prohibited or unauthorized disclosure or use of the Evaluation Material. You will exercise such precautions and take such measures as are reasonable in the circumstances to prevent improper use or disclosure of Evaluation Material by such persons, and the Company shall be a third party beneficiary of the confidentiality obligations of such persons to you.

You agree that, without the prior written consent of the Company, you and your Representatives will not disclose to any person the fact that the Evaluation Material has been made available to you, that discussions or negotiations are taking place concerning a possible Transaction involving the Company, or any of the terms, conditions or other facts with respect thereto (including the status thereof).

You further agree not to contact any employees, landlords, lenders, suppliers, or other creditors of the Company regarding a possible Transaction or the Evaluation Materials without the Company's prior written consent, and that all communications regarding a possible Transaction with the Company, requests for additional information and questions regarding procedures with respect to a possible Transaction will be submitted or directed to B. Riley Advisory Services ("***B. Riley Advisory***") and not to the Company or its Representatives.

1

In the event that you or any of your Representatives are requested or required to disclose any of the Evaluation Material in legal proceedings, subpoena, civil investigative demand or other similar process, you shall provide the Company with prompt written notice of any such request or requirement so that the Company may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement.  In the event such protective order or other remedy is not obtained, or the Company waives compliance with the provisions hereof, you agree to (i) furnish only that portion of the Evaluation Material for which the Company has waived compliance or for which you are advised by counsel is legally required and (ii) exercise your best efforts to obtain assurance that the Evaluation Material will be accorded such confidential treatment.

At any time upon the written request (including by email) of the Company for any reason, you will, and will direct your Representatives to, promptly deliver to the Company or at your sole option destroy all Evaluation Material (and all copies thereof) in your possession or under your reasonable control. Upon written request of the Company, you shall confirm in writing to the Company (including by email) that destruction has taken place. Notwithstanding anything herein to the contrary, you and your Representatives may retain Evaluation Material as required by Law or internal document retention policies. Notwithstanding the return or destruction of the Evaluation Material, you and your Representatives will continue to be bound by your obligations of confidentiality and other obligations hereunder for of the term of this Agreement.

You understand and acknowledge that the furnishing of the Evaluation Materials to you does not constitute a representation of any kind as to the accuracy or completeness of such information. None of the Company, B. Riley Advisory, nor any of their respective Representatives makes any express or implied representation or warranty as to the accuracy or completeness of the Evaluation Material.  You agree that, if you determine to engage in a Transaction with the Company, your determination will be based solely on the terms of such definitive agreement and on your own investigation, analysis and assessment of the Company and the Transaction.

You agree that unless and until a definitive agreement regarding a Transaction has been executed, neither the Company nor you will be under any legal obligation of any kind whatsoever with respect to such a Transaction by virtue of this Agreement except for the matters specifically agreed to herein, and you hereby waive, in advance, any claims (including breach of contract) in connection with any possible Transaction with the Company unless and until you shall have entered into a final definitive agreement.

It is further understood and agreed that money damages will not be a sufficient remedy for any breach of this Agreement by you or any of your Representatives and that the Company shall be entitled to equitable relief, including injunction and specific performance, as a remedy for any such breach.  Such remedies shall not be deemed to be the exclusive remedies for a breach by you of this Agreement, but shall be in addition to all other remedies available at law or equity to the Company.

This Agreement shall be governed by and construed in accordance with the laws of the State of Texas without giving effect to such state's principles of conflicts of laws.

This Agreement will terminate upon (a) the closing of the potential Transaction between the parties, or (b) the two-year anniversary of the date of this Agreement, whichever is earlier.

The terms of this Agreement may only be waived, amended or modified by a written instrument signed by the parties hereto.

Any notices required to be given hereunder shall be via email, as follows:

If to the Company:

B. Riley Advisory Services
3445 Peachtree Road, Suite 1225
Atlanta, GA 30326
Attention: Joe Pegnia
Email:  jpegnia@brileyfin.com

With a copy to:

Ferguson Braswell Fraser Kubasta PC
2500 Dallas Parkway
Suite 600
Plano, TX 75093
Attention: Rachael L. Smiley
e-mail: rsmiley@fbfk.law

If to ----------------:

[to come]

With a copy to:

[to come]

Please confirm your agreement with the foregoing by signing and returning one copy of this Agreement to the undersigned, whereupon this Agreement shall become a binding agreement between you and the Company.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

Sincerely,

B. Riley Advisory Services
as Agent for and on behalf of the Company

By: _____
    Name:
    Title:

[INSTITUTION]

By: _____
    Name:
    Title: