

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 8, 2023**

*Mark X. Mullin*

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re | § | **Chapter 11** |
| | § | |
| **LEADING LIFE SENIOR LIVING, INC.,** | § | **Case No. 22-42784-mxm** |
| | § | |
| Debtor. | § | |
| | § | |

**ORDER APPROVING THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS PURSUANT TO
11 U.S.C. § 363 AND GRANTING RELATED RELIEF**

Upon consideration of the *Emergency Motion for An Order (I) Approving the Sale of Substantially All of the Debtor's Assets; (II) Approving the Bid Procedures and Protections in Connection with the Sale of Substantially All of the Debtor's Assets; Approving the Form and Manner of Assumption and Assignment of Executory Contracts; and (IV) Granting Related Relief* (the "Sale Motion") [Docket No. 54] of the above-captioned debtor and debtor in possession (the "Debtor"), which requests an order (this "Sale Order") that, among other things, authorizes and approves (a) the sale, assignment, transfer, conveyance and delivery of substantially all of the

1

Debtor's assets (the "<u>Assets</u>" as further defined in the Asset Purchase Agreement as the same may be amended, modified or supplemented in accordance with its terms, and including all related exhibits and schedules, the "<u>Agreement</u>") a complete copy of which is attached hereto as **Exhibit A** among the Debtor and Jasmine Estates Holdings, LLC (the "<u>Purchaser</u>"), (v) the assumption and assignment of certain unexpired leases and executory contracts identified as "<u>Assumed Contracts</u>" (as defined in the Agreement and inclusive of all Purchaser's rights with respect to the Assumed Contracts set forth in the Agreement),[1] in each case, effective as of the Closing on the Closing Date, all as more fully set forth in the Motion; this Court having entered the *Order Granting Emergency Motion for an Order (I) Approving the Sale of Substantially All of the Debtor's Assets; (II) Approving the Bid Procedures and Protections in Connection with the Sale of Substantially All of the Debtor's Assets; Approving the Form and Manner of Assumption and Assignment of Executory Contracts; and (IV) Granting Related Relief* on December 19, 2022 [Docket No. 85] (the "<u>Sale Procedures Order</u>"); this Court having reviewed and considered the Sale Motion and any objections thereto; this Court having heard statements of counsel and the evidence presented in support of the relief requested by the Debtor in the Sale Motion at a hearing before this Court (the "<u>Sale Hearing</u>"); upon the full record of these Chapter 11 Cases; it appearing no other notice need be given; it further appearing the legal and factual bases set forth in the Sale Motion and the record made at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause therefor, THE COURT FINDS AND DETERMINES THAT:

**<u>Jurisdiction, Final Order, and Statutory Predicates</u>**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure made

---

[1] All capitalized terms not otherwise defined herein shall be given the meaning assigned to them in the Agreement.

US.355669491.01

applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

C.        This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

D.        The Debtor has confirmed its consent to the entry of a final order by this Court in connection with the Sale Motion, to the extent it is later determined the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

E.        Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

F.        The bases for the relief requested in this Motion are Sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rules 2002-1, and 6004-1.

G.        This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds there is no just reason for delay in the implementation of this Sale Order, and waives any stay and expressly directs entry of judgment as set forth herein.

**Retention of Jurisdiction**

H.        It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Agreement, including its related documents, all amendments thereto and any waivers and consents

3

thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Purchaser, and to adjudicate, if necessary, any and all disputes involving the Debtor concerning or relating in any way to, or affecting, the Sale or the transactions contemplated in the Agreement, and related documents.

**Corporate Authority: Consents and Approvals**

I.      Upon entry of this Sale Order, the Debtor has (a) the full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, (b) all corporate authority necessary to consummate the transaction contemplated by the Agreement, and (c) taken all corporate action necessary to authorize and approve the Agreement and the consummation of the transactions contemplated thereby. The Sale has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the Agreement, are required for the Debtor to consummate the Sale, the Agreement, or the transactions contemplated thereby.

**Notice of Sale, Auction, Sale Hearing, Agreement, and Assumption and Assignment**

J.      Actual written notice of the Sale Motion, the Sale, the Auction, the Sale Hearing, and the transactions contemplated thereby, and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, has been afforded to all known interested entities and parties, including, without limitation, the following entities and parties: (a) the Office of the United States Trustee for the Northern District of Texas; (b) counsel for the Bond Trustee; (c) counsel for the DIP Lender; (d) the Oklahoma State Department of Health; (e) parties on the Debtor's creditor matrix; (f) those parties requesting notice pursuant to Bankruptcy Rule 2002; (g) all parties known or reasonably believed to have asserted an Interest in the Assets; (h) the counterparties to the Assumed Contracts (the "Contract Counterparties"); and (i) the Debtor's

4

US.355669491.01

insurance carriers.

K.      In addition, the Debtor has caused notice of the Sale Motion, the Sale, the Auction, and the Sale Hearing to posted on the website maintained by the Debtor's claims and noticing agent, Omni Agent Solutions, located at https://cases.omniagentsolutions.com/home?clientId=3645. The foregoing notice was sufficient and reasonably calculated under the circumstances to reach entities whose identities are not reasonably ascertainable by the Debtor.

L.      In accordance with the provisions of the Sale Procedures Order, the Debtor has served notice upon the Contract Counterparties: (a) that the Debtor seeks to assume and assign to the Purchaser the Assumed Contracts on the Closing Date (as defined in the Agreement); and (b) of the relevant Cure Amounts (as defined below). Service of such notice was good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of establishing a Cure Amount for the Contracts. As provided under the Sale Procedures Order, each of the Contract Counterparties shall have fourteen (14) days from the date of service of notice of such Cure Amounts to object to the Cure Amounts set forth in the notice and to the assumption and assignment to the Purchaser of the applicable Assumed Contracts (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the counterparty from accepting performance by, or rendering performance to, the Purchaser (or its designee) for purposes of Bankruptcy Code Section 365(c)(1). To the extent that the Debtor, the Purchaser and any Contract Counterparty are unable to resolve any such objection to a Cure Amount, the Court shall hold a hearing to resolve such objection.

M.      The notice of the Auction and the Sale Hearing provided all interested parties with timely and proper notice of the Sale, the Auction, and the Sale Hearing.

N.      The Debtor has articulated good and sufficient reasons for this Court to grant the

US.355669491.01

relief requested in the Sale Motion.

O.       As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Sale, the Auction, the Sale Hearing, and the transactions contemplated thereby, including, without limitation, the assumption and assignment of the Assumed Contracts to the Purchaser, has been provided in accordance with the Sale Procedures Order and Bankruptcy Code sections 105(a), 363, and 365 and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014.  The notices described herein were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Sale, the Auction, the Sale Hearing, the assumption and assignment of the Assumed Contracts, or the right to object to the assumption and assignment of the Assumed Contracts to the Purchaser, is or shall be required.

P.       The disclosures made by the Debtor concerning the Sale Motion, the Agreement, the Auction, the Sale Hearing, the Sale, and the assumption and assignment of the Assumed Contracts to the Purchaser were good, complete, and adequate.

Q.       A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion, and the relief requested therein (including, without limitation, the assumption and assignment of the Assumed Contracts to the Purchaser and any Cure Amounts relating thereto), has been afforded to all interested persons and entities, including the applicable notice parties.

**The Auction**

R.       The Debtor conducted the Auction on February 6, 2023, and has otherwise complied in all respects with, the Sale Procedures Order.  The Auction process set forth in the Sale Procedures Order afforded a full, fair, and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Assets. The Auction was duly noticed and conducted in a non-collusive, fair, and good faith manner, and a reasonable opportunity has been given to any interested

6

party to make a higher and better offer for the Assets. The Auction was transcribed. At the conclusion of the Auction, the Debtor determined in the exercise of its good faith business judgment that the Purchaser submitted the highest and best bid for the Assets and, accordingly, the Purchaser was determined to be the Successful Bidder for the Assets.

**<u>Good Faith of the Purchaser</u>**

S.    As demonstrated by the representations of counsel and other evidence proffered or adduced at the Sale Hearing, the Debtor and its advisors marketed the Assets to secure the highest and best offer. The terms and conditions set forth in the Agreement are fair, adequate, and reasonable, including the amount of the Purchase Price (as defined in the Agreement), which is found to constitute reasonably equivalent and fair value.

T.    The Purchaser is not an "insider" or "affiliate" of the Debtor, as those terms are defined in Bankruptcy Code Section 101, and no common identity of incorporators, directors, managers, controlling shareholders, or other insider of the Debtor exist between the Purchaser and the Debtor.

U.    The Debtor and the Purchaser extensively negotiated the terms and conditions of the Agreement in good faith and at arm's length. The Purchaser is purchasing the Assets and has entered into the Agreement in good faith and is a good faith buyer within the meaning of Bankruptcy Code Section 363(m), and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (i) the Purchaser recognized the Debtor was free to deal with any other party interested in purchasing the Assets; (ii) the Purchaser agreed to subject its bid to competitive bidding at the Auction; (iii) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (iv) the Purchaser has not violated

Bankruptcy Code Section 363(n) by any action or inaction; (v) no common identity of directors or controlling stockholders exists between the Purchaser and the Debtor; and (vi) the negotiation and execution of the Agreement was at arm's length and in good faith.

V.       Neither the Debtor nor the Purchaser have engaged in any conduct that would cause or permit the Agreement to be avoided under Bankruptcy Code Section 363(n). The Debtor and the Purchaser were represented by their own respective counsel and other advisors during such arm's length negotiations in connection with the Agreement and the Sale.

W.       No party has objected to the Sale, the Agreement, or the Auction on the grounds of fraud or collusion.

X.       Accordingly, the Purchaser is purchasing the Assets in good faith and is a good-faith buyer within the meaning of Bankruptcy Code section 363(m). The Purchaser is therefore entitled to all of the protections afforded under Bankruptcy Code section 363(m).

**Highest and Best Offer**

Y.       As demonstrated by the *Declaration of Joseph V. Pegnia in Support of the Sale of Substantially All of the Debtor's Assets to Jasmine Estates Holdings, LLC* [Docket No. 133], the Debtor conducted a sale process in accordance with, and have otherwise complied in all respects with, the Sale Procedures Order. The sale process set forth in the Sale Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets. The Auction was duly noticed in a non-collusive, fair, and good-faith manner, and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Assets.  The Agreement constitutes the highest and best offer for the Assets and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. The Debtor's determination that the Agreement constitutes the highest and

8

best offer for the Assets constitutes a valid and sound exercise of the Debtor's business judgment.

Z.      The Agreement represents a fair and reasonable offer to purchase the Assets under the circumstances of these Chapter 11 Cases. No other entity or group of entities has offered to purchase the Assets for greater overall value to the Debtor's estate than the Purchaser.

AA.     Approval of the Sale Motion and the Agreement and the consummation of the transaction contemplated thereby are in the best interests of the Debtor, its estate, its creditors, and other parties in interest.

BB.     The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Assets prior to, and outside of, a plan of reorganization.

CC.     Entry of an order approving the Agreement and all the provisions thereof is a necessary condition precedent to Purchaser's consummation of the Sale, as set forth in the Agreement.

**<u>No Fraudulent Transfer or Merger</u>**

DD.     The consideration provided by the Purchaser pursuant to the Agreement (a) is fair and reasonable, (b) is the highest or best offer for the Assets, and (c) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.

EE.     Neither the Purchaser nor its past, present, and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns, nor any of its nor their respective directors, managers, officers, employees, shareholders, members, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners,  insurance

9

companies, or partners (collectively, the "Purchaser Parties") is a mere continuation of the Debtor or its estate, and there is no continuity of enterprise between any Purchaser Party and the Debtor. No Purchaser Party is holding itself out to the public as a continuation of the Debtor or its estate. No Purchaser Party is a successor to the Debtor or its estate, and the Sale does not amount to a consolidation, merger, or *de facto* merger of the Purchaser (or any other Purchaser Party) and the Debtor.

**Validity of Transfer**

FF. The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any of its states, territories, or possessions, or the District of Columbia. Neither the Debtor nor the Purchaser is entering into the transactions contemplated by the Agreement fraudulently, for the purposes of statutory and common law fraudulent conveyance and fraudulent transfer claims. The Debtor is the sole and lawful owner of the Assets. Subject to Bankruptcy Code Section 363(f) (addressed below), the transfer of the Assets to the Purchaser will be, as of the Closing Date, a legal, valid, and effective transfer of the Assets, which transfer vests or will vest the Purchaser with all right, title, and interest of the Debtor to the Assets free and clear of (i) all liens (including any liens as that term is defined in Bankruptcy Code Sections 101(37)) and Encumbrances (as defined in the Agreement) relating to, accruing, or arising any time prior to the Closing Date (collectively, the "Liens"), and (ii) all debts (as that term is defined in Bankruptcy Code Section 101(12)) arising under, relating to, or in connection with any act of the Debtor or claims (as that term is defined in Bankruptcy Code Section 101(5)), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests, mortgages, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, deeds of trusts, security interests or similar interests, conditional sale or other title retention agreements and other similar impositions, restrictions on transfer or use, pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability, alter ego liability, suits, defenses, credits,

10

allowances, options, limitations, causes of action, choses in action, rights of first refusal or first offer, rebate, chargeback, credit, or return, proxy, voting trust or agreement or transfer restriction under any shareholder or similar agreement or encumbrance, easements, rights of way, encroachments, Liabilities (as defined in the Agreement), and matters of any kind and nature, whether arising prior to or subsequent to the Petition Date, whether known or unknown, legal or equitable, mature or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, rights with respect to Claims (as defined below) and Liens (A) that purport to give any party a right or option to effect a setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtor's or the Purchaser's interests in the Assets, or any similar rights, if any, or (B) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attribute of ownership) collectively, as defined in this clause (ii), the "Claims" and, together with the Liens and other interests of any kind or nature whatsoever, the "Interests"), relating to, accruing or arising any time prior to the entry of this Sale Order, with the exception of the Assumed Obligations and the Permitted Encumbrances (each as defined in the Agreement for conveyance purposes) to the extent set forth in the Agreement, and any covenants set forth in the Agreement.    It is understood, however, that claims held by the Bond Trustee shall automatically attach to the proceeds from the sale of the Assets, to the same extent, validity and priority as existed on such Assets as of the Petition Date.

GG.    For the avoidance of doubt, the terms "Liens" and "Claims," as used in this Sale Order, include, without limitation, rights with respect to any Liens and Claims:

(1)    that purport to give any party a right of setoff or recoupment against, or a right or option to affect any forfeiture, modification, profit-sharing interest, right of first refusal, purchase or repurchase writer

11

US.355669491.01

option, or termination of, any of the Debtor's or the Purchaser's

interest in the Assets, or any similar rights; or

(2)        in respect of taxes, restrictions, rights of first refusal, charges of

interest of any kind and nature, if any, and including, without

limitation, any restriction of use, voting, transfer, receipt of income,

or other exercise of any of the attributes of ownership relating to,

accruing, or arising at any time prior to the Closing Date, with the

exception of Permitted Encumbrances and Assumed Obligations (as

those terms are defined in the Agreement) that are expressly assumed

by the Purchaser pursuant to the Agreement.

HH.    For the further avoidance of doubt, the Purchaser is expressly assuming

responsibility for the Assumed Contracts, including payment of the Cure Amounts and any

obligations arising at or after the Closing Date under the Assumed Contracts, as set forth in the

Agreement.

II.    For the further avoidance of doubt, the trade names "Jasmine Estates of Edmond",

and "Jasmine Estates of Oklahoma City" are included in the Assets transferred to Purchaser free

and clear of any, Liens, Claims, and Interests.

**Bankruptcy Code Section 363(f) Is Satisfied**

JJ.    The conditions of Bankruptcy Code Section 363(f) have been satisfied in full;

therefore, the Debtor may sell the Assets free and clear of any Interests in the property other than

any Permitted Encumbrances and Assumed Obligations (as defined in the Agreement). The

Purchaser would not have entered into the Agreement, and would not consummate the transactions

contemplated thereby, if the Sale of the Assets to the Purchaser and the assumption of any

12

Assumed Obligations by the Purchaser were not free and clear of all Interests, other than Permitted

Encumbrances and the Assumed Obligations, or if the Purchaser would, or in the future could, be

liable for any of such Interests (other than the Permitted Encumbrances and the Assumed

Obligations). Unless otherwise expressly included in the Permitted Encumbrances or the Assumed

Obligations, the Purchaser shall not be responsible for any Interests against the Debtor, its estate,

or any of the Assets, including in respect of the following: (a) any labor or employment agreement;

(b) all mortgages, deeds of trust, and other security interests; (c) any other environmental,

employee, workers' compensation, occupational disease, or unemployment- or temporary

disability-related claim, including, without limitation, claims that might otherwise arise under or

pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair

Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation

Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining

Notification Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and the Age

Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of

1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination

laws, (xi) the unemployment compensation laws or any other similar state laws, or (xii) any other

state or federal benefits or claims relating to any employment with the Debtor or their predecessor,

if any, (xiii) Claims or Liens arising under any Environmental Law (as defined in the Agreement)

with respect to the Debtor's business, Excluded Liabilities (as defined in the Agreement), the

Assets, the Excluded Assets (as defined in the Agreement), or any assets owned or operated by the

Debtor or any corporate predecessor of the Debtor, at any time prior to the Closing Date, (xiv) any

bulk sales or similar law, (xv) any tax statutes or ordinances, including, without limitation, the

Internal Revenue Code of 1986, as amended, and (xvi) any statutory or common-law bases for

US.355669491.01

successor liability.

KK.    The Debtor may sell the Assets free and clear of all Interests in such property of any entity other than the Debtor's estate, including, without limitation, any Liens and Claims against the Debtor, its estate, or any of the Assets (other than the Permitted Encumbrances and Assumed Obligations) because, in each case, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied. Those holders of Interests in the Assets, including, without limitation, holders of Liens and Claims against the Debtor, its estate, or any of the Assets, who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2). Specifically, the Bond Trustee has consented to the sale of the Assets free and clear of its liens, subject to the terms and conditions of this Sale Order and so long as the net proceeds are appropriately applied to the prepetition and post-petition obligations of the Debtor to the Bond Trustee.

### Assumption and Assignment of the Assumed Contracts

LL.    The assumption and assignment of the Assumed Contracts pursuant to the terms of this Sale Order is integral to the Agreement and is in the best interest of the Debtor and its estate, its creditors, and all of the parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtor.

MM.    Unless otherwise agreed and stated on the record at the Sale Hearing and except as expressly provided herein and in the Agreement, the respective amounts set forth under the "Cure Amount" on **Exhibit A** attached reflect the sole amounts necessary under Bankruptcy Code Section 365(b) to cure all monetary defaults and pay all pecuniary losses under the Assumed Contracts (collectively, the "Cure Amounts"), and no other amounts are or shall be due in connection with the assumption by the Debtor and the assignment to the Purchaser of the Assumed

14

Contracts.

NN.    Pursuant to the terms of the Agreement, the Purchaser shall: (a) to the extent necessary, cure any default existing prior to the date hereof with respect to the Assumed Contracts, within the meaning of Bankruptcy Code Sections 365(b)(1)(A) and 365(f)(2)(A); and (b) to the extent necessary, the Purchaser shall provide compensation or adequate assurance of compensation to any Contract Counterparty for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assumed Contracts, within the meaning of Bankruptcy Code Sections 365(b)(1)(B) and 365(f)(2)(A).

OO.    As of the Closing Date, subject only to the payment of the Cure Amounts, as determined in accordance with the Agreement and the procedures identified in the Sale Motion and its accompanying and related documents, each of the Assumed Contracts will be in full force and effect and enforceable by the Purchaser against any Contract Counterparty thereto in accordance with its terms.

PP.    The Debtor has, to the extent necessary, satisfied the requirements of Bankruptcy Code Sections 365(b)(1) and 365(f) in connection with the Sale, the assumption and assignment of the Assumed Contracts, and shall upon assignment thereto on the Closing Date, be relieved from any liability for any breach thereof.

QQ.    The Purchaser has demonstrated it has the financial wherewithal to fully perform and satisfy the obligations under the Assumed Contracts as required by Bankruptcy Code Sections 365(b)(1)(C) and 365(f)(2)(B). Pursuant to Bankruptcy Code Section 365(f)(2)(B), the Purchaser has provided adequate assurance of future performance of the obligations under the Assumed Contracts.

RR.    The Purchaser's promise to pay the Cure Amounts and to perform the

15

obligations under the Assumed Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of Bankruptcy Code Sections 365(b)(1)(C) and 365(f)(2)(B).

SS.         The rights of Contract Counterparties to file objections to the assumption and assignment of any of the Assumed Contracts to the Purchaser, or to the Cure Amount, are hereby preserved for fourteen (14) days following notice of such assumption and assignment to any such Contract Counterparties, and to the extent such objections are not resolved, the Court shall hold a hearing to resolve such objections. To the extent any Contract Counterparty fail to timely object to its Cure Amount or to the assumption and assignment of its Assumed Contracts to the Purchaser, such Contract Counterparty will be deemed to have consented to such Cure Amount and the assignment of its Assumed Contract(s) to the Purchaser and waived any other defaults under the Assumed Contracts.

TT.    No sections or provisions of the Assumed Contracts that purport to (a) prohibit, restrict or condition the Debtor's assignment of the Assumed Contracts, including, but not limited to, the conditioning of such assignment on the consent of the non-debtor parties to such Assumed Contracts; (b) authorize the termination, cancellation or modification of the Assumed Contracts based on the filing of a bankruptcy case, the financial condition of the Debtor or similar circumstances; or (c) declare a breach or default or otherwise give rise to a right of termination as a result of any change in control in respect of the Debtor, shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions under Bankruptcy Code section 365(f) and/or are otherwise unenforceable under Bankruptcy Code Section 365(e). The (i) transfer of the Assets to the Purchaser and (ii) assignment to the Purchaser of the Assumed Contracts, will not subject the Purchaser or any of its affiliates or designees to any liability whatsoever that arises

16

prior to the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of antitrust, successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state or federal law or otherwise.

UU.     Notwithstanding anything herein to the contrary, all assumption rights of Purchaser under the Agreement are expressly preserved.

## Sound Business Purpose for the Sale

VV.     Good and sufficient reasons for approval of the Agreement and the Sale have been articulated. The relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest.

WW.     The Debtor has demonstrated both (a) good, sufficient, and sound business purposes and justifications for approving the Agreement and (b) compelling circumstances for the sale outside the ordinary course of business, pursuant to Bankruptcy Code Section 363(b) before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtor's estate, and the Sale will provide the means for the Debtor to maximize distributions to creditors.

## Compelling Circumstances for an Immediate Sale

XX.     To maximize the value of the Assets and preserve the viability of the businesses to which the Assets relate, it is essential the Sale of the Assets occur promptly. Therefore, time is of the essence in effectuating the Agreement and consummating the Sale. As such, the Debtor and the Purchaser intend to close the Sale of the Assets as soon as reasonably practicable. The Debtor has demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for immediate approval and consummation of the Agreement. Accordingly, there is

US.355669491.01

sufficient cause to waive the stay provided in Bankruptcy Rules 6004(h) and 6006(d).

YY.    Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price under the Agreement, the proposed Sale of the Assets to the Purchaser constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

ZZ.    The consummation of the Sale and the assumption and assignment of the Assumed Contracts is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation Bankruptcy Code Sections 105(a), 363(b), 363(f), 363(m), and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

AAA.    The Sale does not constitute a *sub rosa* or *de facto* chapter 11 plan for which approval has not been sought without the protections a disclosure statement would afford, as it does not and does not propose to: (i) impair or restructure existing debt of, or equity interests in, the Debtor; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtor; (iii) circumvent chapter 11 plan safeguards, such as those set forth in Bankruptcy Code sections 1125 and 1129; or (iv) classify claims or equity interests, compromise controversies, or extend debt maturities. Accordingly, the Sale neither impermissibly restructures the rights of the Debtor's creditors, nor impermissibly dictates a liquidating chapter 11 plan for the Debtor.

### NOW, THEREFOR, IT IS HEREBY ORDERED AS FOLLOWS:

**General Provisions.**

1.    **Relief Granted.** The relief requested in the Sale Motion and the transactions contemplated thereby and by the Agreement are approved for the reasons set forth in this Sale Order and on the record of the Sale Hearing, which is incorporated herein as if fully set forth in this Sale Order.

2.    **Objections Overruled.** All objections, statements, and reservations of rights to the Sale Motion and the relief requested therein that have not been withdrawn, waived, or settled by

US.355669491.01

announcement to the Court during the Sale Hearing or by stipulation filed with the Court, including, without limitation, any and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits, with prejudice. Those parties who did not object, or withdrew their objections, to the Sale Motion are deemed to have consented pursuant to Bankruptcy Code Section 363(f)(2).

3.      **Prior Findings and Conclusions Incorporated.** This Court's findings of fact and conclusions of law set forth in the Bid Procedures Order are incorporated herein by reference.

4.      **Sale Order and Agreement Binding on All Parties.** This Sale Order and the Agreement shall be binding in all respects upon all creditors of the Debtor (whether known or unknown), agents, trustees and collateral trustees, holders of Interests in, against, or on the Assets, or any portion thereof, all Contract Counterparties and any other non-debtor parties to any contracts with the Debtor (whether or not assigned), all successors and assigns of the Debtor, and any subsequent trustees appointed in the Chapter 11 Cases or upon a conversion of the Chapter 11 Cases to one or more cases under chapter 7 of the Bankruptcy Code and shall not be subject to rejection or unwinding. Nothing in any chapter 11 plan confirmed in the Chapter 11 Cases, the confirmation order confirming any such chapter 11 plan, any order approving the wind down or dismissal of the Chapter 11 Cases, or any order entered upon the conversion of the Chapter 11 Cases to one or more cases under chapter 7 of the Bankruptcy Code or otherwise shall conflict with or derogate from the provisions of the Agreement or this Sale Order.

**Approval of the Agreement**

5.      **Agreement Approved.** The Agreement and all related documents, exhibits, and schedules attached thereto, and all of the terms and conditions thereof, are hereby approved.

6.      The failure specifically to include any particular provisions of the Agreement

19

(including all ancillary documents executed in connection therewith) in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement (including all ancillary documents executed in connection therewith) be authorized and approved in their entirety.

7.      The Agreement (including all ancillary documents executed in connection therewith) may be modified, amended or supplemented by the parties thereto, in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement is not a material alteration or amendment from the terms of the existing Agreement and has been consented to by the Bond Trustee.

8.      Neither the Purchaser nor the Debtor shall have an obligation to close the Sale until all conditions precedent in the Agreement to each of their respective obligations to close the Sale have been met, satisfied, or waived in accordance with the terms of the Agreement.

9.      Nothing contained in any plan of reorganization or liquidation confirmed in these Chapter 11 Cases or any order of this Court confirming such plans or in any other order in these Chapter 11 Cases, including any order entered after any conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, shall alter, conflict with, or derogate from, the provisions of the Agreement or the terms of this Order.  To the extent of any  such conflict or derogation, the terms of this Order and the  Agreement shall govern.

10.      **Authorization to Consummate Transactions.** Pursuant to Bankruptcy Code Sections 363(b) and (f), the Debtor is authorized, empowered, and directed to use their reasonable best efforts to take any and all actions necessary or appropriate to (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the Agreement, (b) close the Sale as contemplated in the Agreement and this Sale Order, and (c) execute and deliver, perform under,

US.355669491.01

consummate, implement, and fully close the Agreement, including the assumption and assignment to the Purchaser of the Assumed Contracts, together with additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and the Sale.

**Transfer of the Assets**

11.    **Transfer of the Assets Authorized.** Pursuant to Bankruptcy Code Sections 105(a), 363(b), 363(f), and 365 the Debtor is authorized and directed to (a) take any and all actions necessary or appropriate to perform, consummate, implement, and close the Sale in accordance with the terms and conditions set forth in the Agreement and this Sale Order, (b) assume and assign any and all Assumed Contracts, and (c) take all further actions and execute and deliver the Agreement and other related ancillary transaction documents and any and all additional instruments and documents that may be necessary or appropriate to implement the Agreement and the other related documents and consummate the Sale in accordance with the terms thereof, all without further order of the Court. At Closing, all of the Debtor's right, title, and interest in and to, and possession of, the Assets shall be immediately vested in the Purchaser (or its designee). Such transfer shall constitute a legal, valid, enforceable, and effective transfer of the Assets.  The Bond Trustee's liens shall automatically attach to the proceeds of the sale of the Assets to the same extent, validity and priority as existed immediately before the Assets were vested in the Purchaser (or its designee).

12.    **Surrender of Assets by Third Parties.** Upon entry of this Sale Order, all persons and entities that are in possession of some or all of the Assets on the Closing Date are directed to surrender possession of such Assets to the Purchaser or its assignee at the Closing. On the Closing Date, each of the Debtor's creditors are authorized and directed to execute such documents and take such other actions as may be reasonably necessary to release their Interests in the Assets, if any, as

US.355669491.01

such Interests may have been recorded or may otherwise exist. All persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtor to sell and transfer the Assets to the Purchaser in accordance with the terms of the Agreement and this Sale Order.

13.     **Transfer Free and Clear of Interests.** Upon the Debtor's receipt of the Purchase Price, and other than Permitted Encumbrances and Assumed Obligations specifically set forth in the Agreement, the transfer of the Assets to the Purchaser shall be free and clear of all Interests of any kind or nature whatsoever, including, without limitation, (a) successor or successor-in-interest liability, (b) Claims in respect of the Excluded Liabilities, and (c) any and all Contracts not assumed and assigned to the Purchaser pursuant to the terms of the Agreement.  If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Encumbrances against or in the Assets shall not have delivered to the Debtor prior to the Closing of the Sale in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all Encumbrances that the person or entity has with respect to such Assets, then only with regard to the Assets that are purchased by the Purchaser pursuant to the Agreement and this Sale Order, the Debtor is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets.

14.     For the avoidance of doubt, all liens, claims, interests and encumbrances in Debtor's Assets attach automatically to the proceeds of the Sale, including, but not limited to, the Purchase Price in the same manner, validity and priority that they attached to the Debtor's Assets prior to the Sale, including those liens, claims, interests and encumbrances of the Bond Trustee.

15.     **Legal, Valid, and Marketable Transfer with Permanent Injunction.** The

22

transfer of the Assets to the Purchaser pursuant to the Agreement constitutes a legal, valid, and effective transfer of good and marketable title of the Assets, and vests, or will vest, the Purchaser with all right, title, and interest to the Assets, free and clear of all Interests except as otherwise expressly stated as obligations of the Purchaser under the Agreement. All Persons holding interests or claims of any kind or nature whatsoever against the Debtor or the Assets, the operation of the Assets prior to the Closing Date, the Auction or the Acquired Asset Sale are hereby and forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property, or the Assets, any claim, interest or liability existing, accrued, or arising prior to the Closing.

16. **Recording Offices and Releases of Interests.** On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete assignment, conveyance, and transfer of the Assets or a bill of sale transferring good and marketable title of the Assets to the Purchaser. This Sale Order is and shall be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing as to the Assets prior to the Closing, other than Permitted Encumbrances and Assumed Obligations, or as otherwise provided in this Sale Order, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been affected. This Sale Order is and shall be binding upon and govern the acts of all persons, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in

23

or to any lease; and each of the foregoing persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement. A certified copy of this Sale Order may be: (a) filed with the appropriate clerk; (b) recorded with the recorder; and/or (c) filed or recorded with any other governmental agency to act to cancel any Interests against the Assets, other than the Permitted Encumbrances and Assumed Obligations.

17.    **Cancellation of Third-Party Interests.** If any person or entity which has filed statements or other documents or agreements evidencing Interests on or in all or any portion of the Assets (other than with respect to Permitted Encumbrances or Assumed Obligations) has not delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Interests which such person or entity has or may assert with respect to all or a portion of the Assets, the Debtor and the Purchaser are authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets. Notwithstanding the foregoing, the provisions of this Sale Order authorizing the transfer of the Assets free and clear of all Interests (except only for Permitted Encumbrances and Assumed Obligations) shall be self-executing, and it shall not be, or be deemed, necessary for any person or entity to execute or file releases, termination statements, assignments, consents, or other instruments in order for the provisions of this Sale Order to be implemented.

**Assumption and Assignment of Contracts**

18.    **Authorization to Assume and Assign.** Upon the Closing, the Debtor is authorized and directed, in accordance with Bankruptcy Code Sections 105(a), 363 and 365, to assume and assign each of the Assumed Contracts to the Purchaser free and clear of all Interests as of the Closing Date. The payment of the applicable Cure Amounts (if any) by the Purchaser shall (a) effect a cure of all defaults existing thereunder as of the date on which the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "<u>Petition Date</u>") and (b) compensate for any actual pecuniary loss to such Contract Counterparty resulting from such default. The Purchaser shall then have assumed the Assumed Contracts and, pursuant to Bankruptcy Code section 365(f), the assignment by the Debtor of such Assumed Contracts shall not be a default thereunder. After the payment of the relevant Cure Amounts, neither the Debtor, nor the Purchaser shall have any further liabilities to the Contract Counterparties other than the Purchaser's obligations under the Assumed Contracts, that accrue and become due and payable on or after the Closing Date.

19.    **Assignment Requirements Satisfied.** The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser, in accordance with their respective terms, notwithstanding (a) any provision in any such Assumed Contract (including provisions of the type described in Bankruptcy Code Section 365(b)(2), (e)(1) and (f)(1)) which prohibits, restricts or conditions such assignment or transfer or (b) any default by the Debtor prior to Closing under any such Assumed Contract or any disputes between the Debtor and a Contract Counterparty with respect to any such Assumed Contract arising prior to Closing. In particular, any provisions in any Assumed Contract that restrict, prohibit or condition the assignment of such Assumed Contract or allow the Contract Counterparty to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition

25

upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect. Additionally, no sections or provisions of the Assumed Contracts that purport to (a) prohibit, restrict or condition the Debtor's assignment of the Assumed Contracts, including, but not limited to, the conditioning of such assignment on the consent of the non-debtor parties to such Assumed Contracts; (b) authorize the termination, cancellation or modification of the Assumed Contracts based on the filing of a bankruptcy case, the financial condition of the Debtor or similar circumstances; or (c) declare a breach or default or otherwise give rise to a right of termination as a result of any change in control in respect of the Debtor, shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions under Bankruptcy Code Section 365(f) and/or are otherwise unenforceable under Bankruptcy Code Section 365(e). All other requirements and conditions under Bankruptcy Code Sections 363 and 365 for the assumption by the Debtor and assignment to the Purchaser of the Assumed Contracts have been satisfied. Upon the Closing, in accordance with Bankruptcy Code Sections 363 and 365, the Purchaser shall be fully and irrevocably vested with all right, title, and interest of the Debtor under the Assumed Contracts.

20.    **Consent to Assign.** The Contract Counterparties to each Assumed Contract shall be and hereby are deemed to have consented to such assumption and assignment under Bankruptcy Code Section 365(c)(1)(B) or this Court has determined that no such consent is required, and the Purchaser shall enjoy all of the rights and benefits under each such Assumed Contract as of the Closing Date without the necessity of obtaining the Contract Counterparty's written consent to the assumption and assignment thereof.

21.    **Section 365(k).** Upon the Closing and (a) the payment of the applicable Cure Amount or (b) in the event of any dispute over the appropriate Cure Amount, the reserve and

escrow of the amount necessary to satisfy the Cure Amount asserted by the Contract Counterparty pending resolution of the dispute by the Bankruptcy Court, the Purchaser shall be deemed to be substituted for the Debtor as a party to the applicable Assumed Contracts and the Debtor and its estate shall be relieved, pursuant to Bankruptcy Code Section 365(k), from any further liability under the Assumed Contracts.

22.     **No Default.** Subject to the terms hereof with respect to the Cure Amounts, all monetary or non-monetary defaults or other obligations of the Debtor under the Assumed Contracts arising or accruing prior to the Closing Date have been cured or shall promptly be cured by the Debtor in accordance with the terms hereof such that the Purchaser shall have no liability or obligation with respect to any default or obligation arising or accruing under any Assumed Contract prior to the Closing Date, except to the extent expressly provided in the Agreement, except for the Debtor's payment of the Cure Amounts. Each party to an Assumed Contract is forever barred, estopped, and permanently enjoined from asserting against the Purchaser or its property or affiliates, or successors and assigns, any breach or default under any Assumed Contract, any claim of lack of consent relating to the assignment thereof, or any counterclaim, defense, setoff, right of recoupment or any other matter arising prior to the Closing Date for such Assumed Contract or with regard to the assumption and assignment therefore pursuant to the Agreement or this Sale Order. Upon the payment of the applicable Cure Amount, if any, the Assumed Contracts will remain in full force and effect, and no default shall exist under the Assumed Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

23.     **Adequate Assurance Provided.** The requirements of Bankruptcy Code Sections 365(b)(1) and 365(f)(2) are hereby deemed satisfied with respect to the Assumed Contracts based

27

on the Purchaser's evidence of its financial condition and wherewithal and without any further action by the Purchaser, including but not limited to any other or further deposit. Pursuant to Bankruptcy Code Section 365(f), the Purchaser has provided adequate assurance of future performance of the obligations under the Assumed Contracts.

24.     **No Fees.** There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser or the Debtor as a result of the assumption and assignment of the Assumed Contracts.

25.     **Injunction.** Pursuant to Bankruptcy Code Sections 105(a), 363, and 365, other than the right to payment of the Cure Amounts by the Debtor, if any, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Debtor or the Purchaser any assignment fee, default, breach or claim, or pecuniary loss arising under or related to the Assumed Contracts existing as of the Petition Date or any assignment fee or condition to assignment arising by reason of the Closing.

26.     **No Further Debtor Liability.** Except as provided in the Agreement or in this Sale Order, after the Closing, the Debtor and its estate shall have no further liabilities or obligations with respect to any Assumed Obligations, and all holders of such Claims are forever barred and estopped from asserting such Claims against the Debtor, its successors or assigns, its property, or the Debtor's estate.

27.     **No Waiver of Rights.** The failure of the Debtor or the Purchaser to enforce, at any time, one or more terms or conditions of any Assumed Contracts shall not be a waiver of any such terms or conditions, or of the Debtor's or the Purchaser's rights to enforce every term and condition of the Assumed Contracts.

**Prohibition of Actions Against the Purchaser**

US.355669491.01

28.    **No Successor Liability.** Except for the Permitted Encumbrances and Assumed Obligations set forth in the Agreement, or as otherwise expressly provided for in this Sale Order or the Agreement, the Purchaser shall not have any liability or other obligation of the Debtor arising under or related to any of the Assets. Without limiting the generality of the foregoing, and except as otherwise expressly provided herein or in the Agreement, the Purchaser shall not be liable for any Claims against the Debtor or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, without limitation, under any theory of antitrust, environmental, successor, or transfer reliability, labor law, *de facto* merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing, or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, without limitation, liabilities on account of warranties, intercompany loans, receivables among the Debtor and their affiliates, environmental liabilities, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Assets prior to the Closing.

29.    Other than as expressly set forth in the Agreement, no Purchaser Party shall have any responsibility for (a) any liability or other obligation of the Debtor or related to the Assets or any claims against the Debtor or any of its predecessors or affiliates. Except as expressly provided in the Agreement with respect to the Purchaser, no Purchaser Party shall have any liability whatsoever with respect to the Debtor's (or their predecessors' or affiliates') respective businesses or operations or the Debtor's (or their predecessors' or affiliates') obligations (as defined herein, "Successor or Transferee Liability") based, in whole or in part, directly or indirectly, on any theory of successor or vicarious liability of any kind of character, or based upon any theory of antitrust, environmental, successor, or transferee liability, de facto merger or substantial continuity, labor

29

and employment or products liability, whether known or unknown as of the Closing, now existing

or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated,

including, without limitation, liabilities on account of (a) any taxes arising, accruing, or payable

under, out of, in connection with, or in any way relating to the Assets or the Assumed Obligations

prior to the Closing or in respect of pre-Closing periods or (b) any plan, agreement, practice, policy,

or program, whether written or unwritten, providing for pension, retirement, health, welfare,

compensation, or other employee benefits which is or has been sponsored, maintained, or

contributed to by any Debtor or with respect to which any Debtor has any liability, whether or not

contingent, including, without limitation, any "multiemployer plan" (as defined in Section 3(37) of

ERISA) or "pension plan" (as defined in Section 3(2) of ERISA) to which any Debtor has at any

time contributed, or had any obligation to contribute. Except to the extent expressly included in the

Assumed Obligations with respect to the Purchaser or as otherwise expressly set forth in the

Agreement, no Purchaser Party shall have any liability or obligation under any applicable law,

including, without limitation, (a) the WARN Act, 29 U.S.C. §§ 2101 *et seq.*, (b) the Comprehensive

Environmental Response Compensation and Liability Act, (c) the Age Discrimination and

Employment Act of 1967 (as amended), (d) the Federal Rehabilitation Act of 1973 (as amended),

(e) the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.*, or (f) any foreign, federal, state, or

local labor, employment or environmental law, by virtue of the Purchaser's purchase of the Assets,

assumption of the Assumed Obligations, or hiring of certain employees of the Debtor pursuant to

the terms of the Agreement. Without limiting the foregoing, no Purchaser Party shall have any

liability or obligation with respect to any environmental liabilities of the Debtor or any

environmental liabilities associated with the Assets except to the extent they are Assumed

Obligations set forth in the Agreement.

30.    **Actions Against the Purchaser Enjoined.** Except with respect to Permitted Encumbrances and Assumed Obligations set forth in the Agreement, or as otherwise permitted by the Agreement or this Sale Order, all persons and entities, including, without limitation, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Interests of any kind or nature whatsoever against, or in, all or any portion of the Assets, arising under, out of, in connection with, or in any way relating to, the Debtor, the Assets, the operation of the Debtor's business prior to the Closing Date, or the transfer of the Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, or any of its affiliates, successors, or assigns, or their property or the Assets, such persons' or entities' Interests in and to the Assets, including, without limitation, the following actions against the Purchaser or its affiliates, or their successors, assets, or properties: (a) commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or other order; (c) creating, perfecting, or enforcing any Lien or other Claim; (d) asserting any set off, right of subrogation, or recoupment of any kind; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Assets or conduct any of the business operated with the Assets.

**Other Provisions**

31.    **Licenses**. To the extent subsequently agreed by the parties and to the maximum extent permitted by applicable law, and in accordance with the Agreement, the Purchaser (or its

designee) shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval (collectively, the "<u>Licenses</u>") of the Debtor with respect to the Assets. To the extent subsequently agreed by the parties and to the extent the Purchaser (or its designee) cannot operate under any Licenses in accordance with the previous sentence, such Licenses shall be in effect while the Purchaser (or its designee), with assistance from the Debtor, works promptly and diligently to apply for and secure all necessary government approvals for new issuance of Licenses to the Purchaser (or its designee). To the extent subsequently agreed by the parties, the Debtor shall, at Purchaser's sole cost, maintain the Licenses in good standing to the fullest extent allowed by applicable law for the Purchaser's benefit until equivalent new Licenses are issued to the Purchaser (or its designee).

32.     **Effective Immediately.** For cause shown, pursuant to Bankruptcy Rules 6004(h), 6006(d), and 7062(g), this Sale Order shall not be stayed and shall be effective immediately upon entry, and the Debtor and the Purchaser are authorized to close the Sale immediately upon entry of this Sale Order. The Debtor and the Purchaser may consummate the Agreement at any time after entry of this Sale Order by waiving any and all closing conditions set forth in the Agreement that have not been satisfied and by proceeding to close the Acquired Asset Sale without any notice to the Court, any pre-petition or post-petition creditor of the Debtor and/or any other party in interest.

33.     **Access to Books and Records.** Following the Closing of the Sale, the Debtor shall have, and the Purchaser shall provide, reasonable access to their books and records, to the extent they are included in the Assets transferred to the Purchaser as part of the Sale as set forth in the Agreement.

34.     **Bulk Sales Law.** No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

US.355669491.01

35.    **Agreement Approved in Entirety.** The failure specifically to include any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreement be authorized and approved in its entirety.

36.    **Further Assurances**. From time to time, as and when requested, all parties shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the Sale, including such actions as may be necessary to vest, perfect, or confirm or record or otherwise in the Purchaser its right, title, and interest in and to the Assets.

37.    **Modifications to Agreement.** The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, in a writing signed by such parties, without further order of this Court, provided any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estates.

38.    **Standing.** The transactions authorized herein shall be of full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

39.    **Authorization to Effect Order.** The Debtor is authorized to take all actions necessary to effect the relief granted pursuant to this Sale Order in accordance with the Sale Motion.

40.    **Automatic Stay.** The automatic stay pursuant to Bankruptcy Code section 362 is hereby modified, lifted, and annulled with respect to the Debtor and the Purchaser to the extent necessary, without further order of this Court, to (a) allow the Purchaser to deliver any notice

US.355669491.01

provided for in the Agreement and (b) allow the Purchaser to take any and all actions permitted under the Agreement in accordance with the terms and conditions thereof. The Purchaser shall not be required to seek or obtain relief from the automatic stay under Bankruptcy Code section 362 to enforce any of its remedies under the Agreement or any other Sale-related document. The automatic stay imposed by Bankruptcy Code section 362 is modified solely to the extent necessary to implement the preceding sentence, *provided*, *however*, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

41.      **No Other Bids/Backup Bid.** Except as set forth immediately below, no further bids or offers for the Assets shall be considered or accepted by the Debtor after the date hereof unless the Sale to the Purchaser is not consummated or otherwise does not occur in accordance with the Agreement or its related documents. Notwithstanding the foregoing, McFarlin Group, LLC, , had the second highest or otherwise best Qualified Bid at the Auction, as determined by the Debtor in consultation with the Consultation Parties, in the exercise of their business judgment, and shall act as backup bidder (the "Backup Bidder"). The Backup Bidder shall be required to keep its final Overbid at the Auction as announced on the record at the Auction (the "Backup Bid") in the amount of[ $5,715,000 open and irrevocable until two (2) business days after the Closing Date. If the Purchaser fails to consummate the approved transaction because of a breach or failure to perform on the part of the Purchaser, the Debtor may designate the Backup Bidder to be the Purchaser upon the filing of a notice to such effect with this Court, in which case Backup Bidder, shall be deemed as the "Purchaser" for all purposes of this Sale Order, and the Debtor shall be authorized to consummate the transaction with the Backup Bidder without further order of the Court. In such case, to the extent consistent with the terms of the Agreement, the original Purchaser's deposit shall be forfeited to the Debtor's estates. The closing date to consummate the transaction with the Backup Bidder shall be

US.355669491.01

no later than five (5) days after necessary regulatory approvals are completed by the Backup Bidder and/or the Debtor.

42.     **Order to Govern.** To the extent this Sale Order is inconsistent with any prior order entered or pleading filed in these Chapter 11 Cases, the terms of this Sale Order shall govern. To the extent there are any inconsistencies between the terms of this Sale Order and the Agreement (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

43.     **Standing**. The Purchaser has standing to seek to enforce the terms of this Sale Order.

44.     **Retention of Jurisdiction**. This Court shall retain exclusive jurisdiction with respect to the terms and provisions of this Sale Order and the Agreement.

# # # End of Order # # #

US.355669491.01