

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 29, 2023**

*Mark X. Mullin*
**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re | § | **Chapter 11** |
| | § | |
| **LEADING LIFE SENIOR LIVING, INC.,** | § | **Case No. 22-42784-MXM** |
| | § | |
| | § | |
| | § | |
| Debtor. | § | |
| | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER
### CONFIRMING THE DEBTOR'S PLAN OF LIQUIDATION OF LEADING LIFE
### SENIOR LIVING, INC. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**I.      RECITALS**

A.      On November 18, 2022, Leading Life Senior Living, Inc. ("**Debtor**") filed a voluntary petition for relief under chapter 11 of United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"), initiating the above-captioned chapter 11 bankruptcy case (the "**Chapter 11 Case**").  The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.      No official committee, trustee or examiner has been appointed in the Chapter 11

Case.

C.      On May 11, the Debtor filed the *Debtor's Plan of Liquidation of Leading Life
Senior Living, Inc. Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 153] (the "**Plan**).[1]

D.      Also on May 11, 2023, the Debtor filed the *Disclosure Statement for the Debtor's
Plan of Liquidation of Leading Life Senior Living Inc. Pursuant to Chapter 11 of the Bankruptcy
Code* [Docket No. 154] (the "**Disclosure Statement**").

E.      After due notice and a hearing held on May 17, 2023, the Court entered its Order
(the "**Combined Hearing Order**") [Docket No. 164]: (I) Conditionally Approving the Disclosure
Statement; (II) Scheduling a Combined Hearing on (A) the Adequacy of the Disclosure Statement
and (B) Confirmation of the Plan; (III) Approving the Form and Manner of Notice of the Combined
Hearing, Solicitation Procedures, Ballots, and Related Deadlines; (IV) Fixing a Deadline to Object
to the Disclosure Statement and Plan; and (V) Granting Related Relief, that, among other things,
(i) conditionally approved the Disclosure Statement for the Plan; (ii) established June 21, 2023 at
5:00 PM (CST) as the deadline to vote to accept or reject the Plan (the "**Voting Deadline**") unless
extended by the Debtor; (iii) established June 21, 2023 at 5:00 PM (CST) as the deadline to file
and serve objections to the Plan and the adequacy of the Disclosure Statement; and (iv) scheduled
a hearing to consider confirmation of the Plan and approval of the Disclosure Statement on a final
basis on June 28, 2020 at 1:30 PM (CST) (the "**Combined Hearing**").   Thereafter, the Debtor
commenced its solicitation of votes to accept or reject the Plan.

F.      The manner in which votes were solicited in respect of the Plan is described in the
Certificate of Service, dated June 14, 2023 [Docket No. 166] (the "**Solicitation COS**").

---

[1] Any capitalized term not otherwise defined in this Order shall be given the meaning assigned to it in Article I of
the Plan.

Specifically, the Solicitation COS provides that the Disclosure Statement and Plan, together with the additional solicitation materials approved by the Court in the Combined Hearing Order, were transmitted to each Creditor entitled to vote to accept or reject the Plan (the "**Solicitation Packages**").

G.      On June 14, 2023, the Debtor filed the *Notice of Filing of Plan Supplement Related to the Debtor's Plan of Liquidation of Leading Life Senior Living, Inc. Pursuant to Chapter 11 of the Bankruptcy Code* (the "**Plan Supplement**") [Docket No. 167], containing: (i) the Plan Administration Agreement; and (ii) Initial List of Causes of Action.

H.      On June 27, 2023, the Debtor filed the *Certification of Tabulation of Ballots with Respect to the Vote on the Plan by Rachael L. Smiley* (the "**Ballot Certification**") [Docket No. 170] which summarizes the certified results from the Plan solicitation process.

I.      On June 27, 2023, the Debtor filed the *Declaration of Joseph V. Pegnia in Support of Confirmation of the Debtor's Plan of Liquidation of Leading Life Senior Living, Inc. Pursuant to Chapter 11 of the Bankruptcy Code* (the "**Pegnia Declaration**") [Docket No. 171].

J.      On June 28, 2023, the Court held the Combined Hearing.

**NOW, THEREFORE,** the Court having reviewed and considered the Disclosure Statement, the Plan, the Solicitation COS, the Plan Supplement, the Pegnia Declaration and the Ballot Certification; and the Court having heard statements of counsel in support of confirmation of the Plan at the Combined Hearing; and upon the record, including evidence introduced and testimony proffered or otherwise provided at the Combined Hearing; and the Court having considered any objections to confirmation of the Plan or approval of the Disclosure Statement and any responses or replies to such objections; and the Court having taken judicial notice of the papers and pleadings on file in the Chapter 11 Case; and it appearing to the Court that the legal and factual

bases filed in support of confirmation and presented at the Combined Hearing establish just cause

for the relief granted herein; and after due deliberation thereon and good cause appearing therefor,

the Court hereby makes and issues the following findings of fact and conclusions of law and order:

## II.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.    Jurisdiction, Venue and Other Matters[2]

1.    <u>Incorporation of the Recitals</u>. Each of the foregoing recitals shall be, and hereby is,

incorporated herein as a Finding of Fact.

2.    <u>Exclusive Jurisdiction: Venue: Core Proceeding</u>. The Court has subject matter

jurisdiction over this proceeding and the Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334.

Confirmation is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and this Court has

jurisdiction to enter a final order with respect thereto. Venue is proper in this Court pursuant to 28

U.S.C. §§ 1408 and 1409. This Court has exclusive jurisdiction to determine whether the Plan

complies with the applicable provisions of the Bankruptcy Code, and thus, whether the Plan should

be confirmed.

3.    <u>Objections Overruled</u>. Any resolution of an objection to confirmation of the Plan

explained on the record at the Combined Hearing is hereby incorporated by reference. All

unresolved objections to confirmation of the Plan or approval of the Disclosure Statement and

joinders therein, statements in opposition, and reservations of rights are hereby overruled on the

merits for the reasons set forth on the record at the Combined Hearing.

4.    <u>Burden of Proof</u>. In accordance with section 1121(a) of the Bankruptcy Code, the

Debtor, as proponent of the Plan, has met its burden of proving the elements of section 1129 of the

Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard

---

[2] Headings to sections and paragraphs in this Confirmation Order are inserted for convenience of reference only and
are not intended to affect the interpretation of this Confirmation Order.

for confirmation of the Plan.

5.      <u>Transmittal of Solicitation Packages</u>. The Solicitation Packages were transmitted and served in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the Bankruptcy Court, and the Combined Hearing Order as evidenced by the Solicitation COS. Such transmittal and service of the Solicitation Packages was adequate and sufficient.

6.      <u>Notice of the Combined Hearing and Voting Deadline</u>. As evidenced by the Solicitation COS, notice of the Combined Hearing and the Voting Deadline was appropriately mailed to holders of Claims against the Debtor and other parties in interest. Accordingly, adequate and sufficient notice of the Combined Hearing and the Voting Deadline was given in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Combined Hearing Order, and no other or further notice was, is, or shall be required.

7.      <u>Votes on the Plan</u>. Votes for acceptance or rejection of the Plan were solicited in good faith, and such solicitation complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code, and the Combined Hearing Order. As evidenced by the Ballot Certification, ballots were tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Combined Hearing Order.

8.      <u>Plan Supplement</u>. The Debtor caused the Plan Supplement to be filed with the Court in compliance with the terms of the Plan. The documents included in the Plan Supplement were provided in good faith. The filing and notice of the Plan Supplement was good and proper and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Combined Hearing Order.

**B.**     **Compliance with the Applicable Provisions of the Bankruptcy Code**

9.      <u>Adequacy of the Disclosure Statement</u>.  The Disclosure Statement contains "adequate information" within the meaning of 11 U.S.C. § 1125.

10.     <u>The Plan's Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. As set forth below, the Plan complies with all, and is not inconsistent with, the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

a.      <u>Proper Classification of Claims  (11 U.S.C. §§ 1122 and 1123(a)(1))</u>. In addition to Administrative Claims and Priority Tax Claims, which need not be classified, the Plan designates five Classes of Claims. The Claims placed in each Class are substantially similar to the other Claims, as the case may be, in such Class. Valid business, factual and legal reasons exist for separately classifying the various categories of Claims created under the Plan, the classifications were not done for any improper purpose and the creation of such Classes does not unfairly discriminate between or among holders of Claims. Thus, the Plan satisfies the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code.

b.      <u>Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. There are no unimpaired Classes under the Plan; as such, section 1123(a)(2) of the Bankruptcy Code does not apply to the Plan.

c.      <u>Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Article III of the Plan specifies that each of Classes 1, 2, 3, 4 and 5 are Impaired under the Plan and specifies the treatment of Claims in those Classes, thereby satisfying section

1123(a)(3) of the Bankruptcy Code.

d.    <u>Equal Treatment within Classes (11 U.S.C. § 1123(a)(4))</u>. The Plan

provides for the same treatment for each Claim in a particular Class, as the case may be,

unless the holder of a particular Claim in such Class has agreed to less favorable treatment

of its Claim, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

e.    <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan and Plan

Supplement provide adequate and proper means for implementation of the Plan, including,

without limitation, Article V (Means for Implementation of the Plan); Article VI

(Distributions); and Article IX (Retention of Jurisdiction). Accordingly, the requirements

of section 1123(a)(5) of the Bankruptcy Code are satisfied.

f.    <u>Prohibition on Issuance of Nonvoting Equity Securities (11 U.S.C. §
1123(a)(6))</u>.  Section 10.13 of the Plan provides that the Debtor shall comply with the

provisions of section 1123(a)(6) of the Bankruptcy Code, to the extent applicable.

Accordingly, the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

g.    <u>The Plan's Provisions Regarding Directors, Officers and the Plan
Administrator are Consistent with the Interests of Creditors and Public Policy (11 U.S.C.§
1123(a)(7))</u>. The Directors, Officers and Plan Administrator, as applicable, of the Post-

Confirmation Debtor as of the Effective Date are disclosed in the Plan and the Plan

Supplement. In light of the foregoing, the requirements of section 1123(a)(7) of the

Bankruptcy Code have been satisfied.

h.    <u>Future Income (11 U.S.C. § 1123(a)(8))</u>. Section 1123(a)(8) of the

Bankruptcy Code is not applicable to the Plan because the Debtor is not an individual.

11.    <u>The Debtor's Compliance with the Applicable Provisions of the Bankruptcy Code</u>

(11 U.S.C. § 1129(a)(2)). The Debtor, as proponent of the Plan, has complied with all applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically, (a) the Debtor's exclusivity period to file a chapter 11 plan under section 1121(b) of the Bankruptcy Code expired on May 17, 2023; (b) the Debtor is a proper proponent of the Plan under section 1121(c) of the Bankruptcy Code; (c) the Debtor has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court, and (d) as stated above, the Debtor has complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, and the Combined Hearing Order in transmitting the Solicitation Packages and in soliciting and tabulating votes on the Plan.

12.    The Debtor's Compliance with Bankruptcy Rule 3016. The Plan is dated and identifies the entity submitting and filing it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Clerk of the Court satisfies Bankruptcy Rule 3016(b).

13.    The Debtor's Compliance with Bankruptcy Rule 3017. The Debtor has given notice of the Combined Hearing as required by Bankruptcy Rule 3017(d) and the Combined Hearing Order. The transmittal and service of the Solicitation Packages was (i) in compliance with the Combined Hearing Order and (ii) sufficient under the Bankruptcy Rules, the Bankruptcy Code, and the facts and circumstances of the Chapter 11 Case.

14.    The Debtor's Compliance with Bankruptcy Rule 3018. The solicitation of votes to accept or reject the Plan from holders of Claims in Classes entitled to vote to accept or reject the Plan as of the Voting Record Date (as defined in the Combined Hearing Order) satisfies Bankruptcy Rule 3018. Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the

Combined Hearing Order.

15. <u>The Debtor Proposed the Plan in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtor

has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying

section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in

good faith, the Court has examined the totality of the circumstances surrounding the filing of the

Chapter 11 Case, the Plan itself and the process leading to its formulation. The Plan was proposed

with the legitimate and honest purpose of liquidating the Debtor's assets for the benefit of its

creditors. The Plan achieves two of the primary objectives underlying a chapter 11 bankruptcy—

the resolution of disputed claims and distribution of value to creditors. Therefore, the Debtor has

proposed the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy

Code.

16. <u>Bankruptcy Court Approval of Certain Payments as Reasonable (11 U.S.C. §</u>

<u>1129(a)(4))</u>. The Plan complies with section 1129(a)(4) of the Bankruptcy Code because any

payment made or to be made by the Debtor for services or for costs and expenses in or in

connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter

11 Case, has been approved by the Court or is subject to the approval of the Court as reasonable.

17. <u>Disclosure of All Necessary Information Regarding Directors and Officers is</u>

<u>Consistent with the Interests of Creditors and Public Policy (11 U.S.C. § 1129(a)(5))</u>. The Plan

satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code. The Plan and the Plan

Supplement disclose the identity of the Plan Administrator, who is also the sole director and officer

of the Post-Confirmation Debtor. The appointment of the Plan Administrator identified in the Plan

and the Plan Supplement is consistent with the best interests of the holders of Claims against the

Debtor and with public policy.

18. <u>Government Regulatory Control over Rate Changes (11 U.S.C. § 1129(a)(6))</u>. Section 1129(a)(6) of the Bankruptcy Code does not apply because the Plan does not provide for any changes in rates over which a governmental regulatory commission has jurisdiction.

19. <u>Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis contained in the Disclosure Statement and other evidence proffered or adduced at the Combined Hearing (i) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented or proffered, (ii) utilize reasonable and appropriate methodologies and assumptions, (iii) have not been successfully challenged or controverted by other evidence or objection, and (iv) establish that each holder of a Claim in an Impaired Class either (x) has voted to accept the Plan (as evidenced by the Ballot Certification) or (y) will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would have received if the Debtor were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

20. <u>Acceptance or Rejection of the Plan by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. As set forth in the Ballot Certification, the percentage of holders of Claims in Impaired Classes entitled to vote on the Plan that voted to accept or reject the Plan is as follows:

| CLASSES | TOTAL BALLOTS RECEIVED | | | |
|---|---|---|---|---|
| | Accept | | Reject | |
| | Percentage Accepting (Dollar Amount) | Percentage Accepting (Number of Claims) | Percentage Rejecting (Dollar Amount) | Percentage Rejecting (Number of Claims) |
| Class 1 – Priority Non-Tax Claims | N/A (N/A) | N/A (N/A) | N/A (N/A) | N/A (N/A) |

| Class 2 – Secured Tax Claims | N/A (N/A) | N/A (N/A) | N/A (N/A) | N/A (N/A) |
|---|---|---|---|---|
| Class 3 – Secured Bond Claims | 99.17% ($5,361.000.00) | 84.62% (11) | 0.83% ($45,000.00) | 15.38% (2) |
| Class 4- Other Secured Claims | N/A (N/A) | N/A (N/A) | N/A (N/A) | N/A (N/A) |
| Class 5 – General Unsecured Claims | 100% ($119,439.27) | 100% (2) | 0% ($0.00) | 0% (0) |

Accordingly, Classes 3 and 5 have all accepted the Plan pursuant to section 1126(c) of the Bankruptcy Code. Classes 1, 2 and 4 were vacant or did not submit votes accepting or rejecting the Plan. Thus, the requirements of section 1129(a)(8) of the Bankruptcy Code have been satisfied.

21.    Treatment of Claims Entitled to Priority (11 U.S.C. § 1129(a)(9)). The Plan complies with section 1129(a)(9) of the Bankruptcy Code because it provides for treatment of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims entitled to priority pursuant to section 507 of the Bankruptcy Code in the manner required by section 1129(a)(9) of the Bankruptcy Code.

22.    Acceptance of at Least One Impaired Class (11 U.S.C. § 1129(a)(10)). As set forth in the Ballot Certification, Classes 3 and 5 voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code. Classes 3 and 5, therefore, qualify as impaired accepting Classes and satisfy the requirements of section 1129(a)(10) of the Bankruptcy Code.

23.    Feasibility of the Plan (11 U.S.C. § 1129(a)(11)). The Plan satisfies section 1129(a)(l1) of the Bankruptcy Code because the Post-Confirmation Debtor will have sufficient liquidity and other financial wherewithal on the Effective Date to allow the Post-Confirmation

Debtor to substantially consummate the Plan. The Post-Confirmation Debtor will have sufficient monies and assets available and existing on the Effective Date to implement the Plan and make all distributions contemplated under the Plan.  The evidence proffered or adduced at the Combined Hearing in support of feasibility of the Plan (i) is reasonable, persuasive, credible, and accurate, and (ii) has not been challenged or controverted by any other evidence. Confirmation of the Plan is not likely to be followed by the liquidation or further reorganization of the Post-Confirmation Debtor. Accordingly, the Plan satisfies section 1129(a)(l1) of the Bankruptcy Code.

24.      Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)). In accordance with section 1129(a)(12) of the Bankruptcy Code, Section 10.11 of the Plan provides that all fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid by the Debtor or Plan Administrator, as applicable, for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or a Final Decree is issued, whichever occurs first. As a result, the requirements of section 1129(a)(12) of the Bankruptcy Code have been satisfied.

25.      Retiree Benefits (11 U.S.C. § 1129(a)(13). Section 10.14 of the Plan provides that the Post-Confirmation Debtor will continue to pay retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, from and after the Effective Date. Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Chapter 11 Case.

26.      Post-petition Domestic Support Obligations and Disposable Income (11 U.S.C. § 1129(a)(14) and (15)). Sections 1129(a)(14) and (15) of the Bankruptcy Code impose certain requirements on individual chapter 11 debtors. As the Debtor is a nonprofit corporate entity, sections 1129(a)(14) and (15) of the Bankruptcy Code are not implicated by the Plan.

27.      Transfers of Property by Nonprofit Entities (11 U.S.C. § 1129(a)(16)). Section 1129(a)(16) of the Bankruptcy Code requires that all transfers of property under the Plan be made

in accordance with any appliable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust. The Debtor is a Texas nonprofit corporation. The Plan complies with sections 22.053 and 22.054 of the Texas Business Organizations Code, which govern prohibited dividends and authorized distributions by Texas nonprofit corporation. As a result, the requirements of section 1129(a)(16) of the Bankruptcy Code have been satisfied.

28.    <u>Satisfaction of Confirmation Requirements</u>. For all of the above reasons, the Plan satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

29.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>. No other plan has been filed in the Chapter 11 Case, other than the Plan filed by the Debtor. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

30.    <u>Principal Purpose (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of section 5 of the Securities Act of 1933 (the "**Securities Act**"), and no Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) has requested that the Court deny confirmation of the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

31.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based upon the record before the Court, the Debtor, its counsel and its advisors have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation Provisions as set forth in Section 10.7 of the Plan and the Limited Releases as set forth in Section 10.8 of the

Plan.

**C.     Other Findings**

32.     <u>Releases, Exculpation, and Injunction</u>. Each of the voluntary release, exculpation, and injunction provisions set forth in Article X of the Plan: (a) is within the jurisdiction of the Court under 28 U.S.C. § 1334; (b) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) is an integral element of the resolution of the Chapter 11 Case, and the orderly liquidation of the Debtor's Assets, in accordance with the Plan and the failure to effect such provision would seriously impair the Debtor's ability to confirm the Plan; (d) confers material benefits on, and is in the best interests, of the Debtor, the Debtor's Estate, and holders of Claims; (e) is, *inter alia*, important to the overall objectives of the Plan; and (f) is consistent with sections 105, 1123, 1129, and other applicable sections of the Bankruptcy Code. The record of the Combined Hearing and the Chapter 11 Case is sufficient to support the limited release, exculpation, and injunction provisions contained in Article X of the Plan.

33.     <u>Executory Contracts and Unexpired Leases</u>. The Debtor has exercised reasonable business judgment in determining to assume or reject any executory contracts and unexpired leases pursuant to Article VII of the Plan. Pursuant to the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, any and all pre-petition leases or executory contracts not previously rejected by a Debtor, unless (i) specifically assumed pursuant to order(s) of the Court prior to the Confirmation Date; or (ii) is the subject of a motion to assume or assume and assign pending on the Confirmation Date; or (iii) is expressly identified on the Assumption Schedule, shall be deemed rejected by such Debtor on the Confirmation Date; provided, however, that nothing in the Plan shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtor or its Estate.

34.    <u>Vesting of Assets in the Post-Confirmation Debtor</u>. Pursuant to Section 5.6 of the Plan, on the Effective Date, all Causes of Action shall vest in and be retained by the Post-Confirmation Debtor.  Pursuant to Sections 5.5 of the Plan, except with respect to the Claims of the Indenture Trustee, and as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in the Estate and any property acquired by the Debtor under the Plan shall vest in the Post-Confirmation Debtor free and clear of all Liens, Claims, charges, or other encumbrances.  The Indenture Trustee's outstanding Liens and security interests against the property of the Debtor's Estate shall be released upon the distribution in full of all Property of the Debtor.

35.    <u>Implementation of the Plan</u>. Pursuant to section 1142(b) of the Bankruptcy Code, no action of the Debtor or Post-Confirmation Debtor (or any of its officers, employees or agents acting on its behalf) will be required (a) to authorize the Debtor or Post-Confirmation Debtor (or any of its officers, employees or agents acting on its behalf) to effectuate and carry out the Plan or any order of the Court relating thereto, (b) to consummate the transactions contemplated by the Plan or this Confirmation Order, or (c) to take any other action contemplated by the Plan or this Confirmation Order as may be necessary and appropriate to fully effectuate the intent and purposes hereof and thereof, and all such actions hereby are or will be deemed to have been taken or done with like effect as if they have been duly authorized or approved by unanimous actions of such officers, employees or agents, as appropriate.

## III.   ORDER

### A.   Confirmation of the Plan

1.      Approval and Confirmation of the Plan. The Plan, which is annexed hereto as **Exhibit 1** shall be, and hereby is, **APPROVED** and **CONFIRMED** pursuant to section 1129 of the Bankruptcy Code.

2.      The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall control and take precedence. The provisions of this Confirmation Order are integrated with each other and are non-severable and are mutually dependent.

3.      The Plan and this Confirmation Order will be effective and binding on all parties in interest in the Chapter 11 Case.

4.      The failure to include or refer to any particular article, section, or provision of the Plan, Plan Supplement, or any related document or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, Plan Supplement, and any related document or exhibit are all approved in their entirety.

5.      The Debtor and all other appropriate parties shall be, and hereby are, authorized and directed to: (a) take all actions necessary or appropriate to enter into, implement and consummate the Plan and any other contracts, instruments, releases, and other agreements created in connection with the Plan or referred to therein, all of which Plan documents and such other contracts, instruments, releases, and other agreements shall be, and hereby are, approved; (b) to

take such other steps to perform such other acts as may be necessary to implement and effectuate the Plan and such other contracts, instruments, releases, and other agreements; and (c) to execute and deliver any instrument and perform any other act that is necessary for the consummation of the Plan, including, but not limited to, entering into the Plan Administration Agreement attached as Exhibit B to the Plan Supplement [Docket No. 167], and such other contracts, instruments, releases, and other agreements, in accordance with section 1142(b) of the Bankruptcy Code, without further application to, or order of the Court, or further action by the respective officers or directors, as appropriate, and with the effect that such actions have been taken by unanimous action of such officer or directors, as appropriate.

6.      Objections. To the extent any objections (including any reservations of rights contained therein) to Confirmation have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated by the Debtor on the record at the Combined Hearing, all such objections (including any joinder or reservation of rights therein) are hereby overruled on the merits.

7.      Findings of Facts and Conclusions of Law. This Confirmation Order constitutes this Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. All findings of fact shall constitute findings of fact even if stated as conclusions of law, and all conclusions of law shall constitute conclusions of law even if stated as findings of fact. To the extent any findings of fact or conclusions of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the Combined Hearing and incorporated herein) constitutes an order of this Court, they are adopted as such.

8.    <u>Notice and Solicitation of Votes</u>. Through service of the Combined Hearing Notice (as defined in the Combined Hearing Order), as evidenced by the Solicitation COS, holders of Claims against the Debtor and all other parties in interest received adequate and sufficient notice of the Voting Deadline (as defined in the Combined Hearing Order), the Objection Deadline (as defined in the Combined Hearing Order), and the Combined Hearing. The Debtor's solicitation of votes as described in the Solicitation COS and Ballot Certification, was appropriate and done in good faith. Accordingly, the Debtor has complied with the applicable notice and solicitation provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Combined Hearing Order.

9.    <u>Binding Effect</u>. The Plan and its provisions shall be binding on the Debtor, the Post-Confirmation Debtor, the Plan Administrator, and any Entity acquiring or receiving property or a Distribution under the Plan, and all holders of Claims (irrespective of whether such holders have or are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor.

10.    <u>Implementation</u>. On and after the Effective Date, the Post-Confirmation Debtor and the Plan Administrator are authorized to (i) execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements to consummate the transactions contemplated pursuant to, and as provided for in, the Plan; (ii) make any and all transfers contemplated pursuant to, and as provided for in, the Plan; and (iii) take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan

11.    <u>Effectiveness of Plan Provisions</u>. Each term and provision of the Plan, as approved by this Confirmation Order, is binding, valid, and enforceable pursuant to its terms.

12.    <u>Execution by Third Parties</u>. Each and every federal, state and local governmental

agency or department shall be, and hereby is, directed to accept, and lessors and holders of liens are directed to execute, any and all documents, instruments or amendments necessary and appropriate to consummate the transactions contemplated by the Plan, including without limitation, documents, instruments or amendments for recording in county and state offices in order to effectuate the Plan.

13. <u>Payment of Statutory Fees</u>. All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid by the Plan Administrator for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or a Final Decree is issued, whichever occurs first.

14. <u>Governmental Approvals Not Required</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any State or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any other documents, instruments or agreements contained therein, and any amendments or modifications of any of the foregoing.

15. <u>Release of Liens</u>. Except as otherwise provided in this Confirmation Order, the Plan, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan, any lien, mortgage, deed of trust, pledge, or other security interest securing any Secured Claim shall be deemed fully released, settled, and compromised and the holder of such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtor held by such holder and to take such actions as may be requested by the Post-Confirmation Debtor or the Plan Administrator, as applicable, to evidence the release of such lien, including, without

limitation, the execution, delivery, filing, or recording of such releases as may be requested by the

Post-Confirmation Debtor or the Plan Administrator as applicable. The filing of this Confirmation

Order with any federal, state, provincial or local agency or department shall constitute good and

sufficient evidence of, but shall not be required to effect, the termination of such liens, Claims,

and other interests described above. Any Entity holding such liens, Claims, or interests shall,

pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver such instruments

of termination, release, satisfaction, and/or assignment (in recordable form) as may be reasonably

requested by the Post-Confirmation Debtor or the Plan Administrator, as applicable.

16.    <u>Liquidation Transactions</u>. On or after the Effective Date, the Post-Confirmation

Debtor and the Plan Administrator, as applicable, may engage or take such actions as may be

necessary or appropriate to effect the Transactions necessary to effect the Plan and the Liquidation

of the Assets subject to the requirements of the Plan Administration Agreement.  As more fully set

forth in the Plan, the Indenture Trustee is authorized to appoint up to three (3) members of the

Oversight Committee.  For the avoidance of doubt, the Indenture Trustee shall be exculpated and

released from any and all claims, obligations, suits judgments, damages, rights, causes of action

and liabilities arising from, in connection with, any action or inaction taken in connection with the

appointment of the Oversight Committee and the actions taken by the Oversight Committee. The

Post-Confirmation Debtor and the Plan Administrator, as applicable, are hereby authorized to

execute and deliver such contracts, instruments, certificates, agreements and documents to make

such filings under applicable law and to take such other actions as any appropriate officer may

determine to be necessary, appropriate or desirable to effectuate such Transactions and the

Liquidation of the Assets.  Each appropriate officer or employee of the Post-Confirmation Debtor

or the Plan Administrator, as applicable, is authorized to execute, deliver, file and have recorded

any of the aforementioned documents and to take such other actions on behalf of the Post-

Confirmation Debtor or the Plan Administrator, as applicable, as such person may determine to be

required, appropriate or desirable under applicable law in connection with the Transactions, and

the appropriate officers or employees of the Post-Confirmation Debtor or the Plan Administrator,

as applicable, are authorized to certify or attest to any of the foregoing actions. The execution and

delivery or filing of any of the aforementioned documents, or the taking of any such action shall

be deemed conclusive evidence of the authority of such person to so act. Each federal, state,

provincial and local governmental agency or department is authorized and directed to accept the

filing of any of the aforementioned documents. This Confirmation Order is declared to be in

recordable form and shall be accepted by any filing or recording officer or authority of any

applicable governmental authority or department without any further orders, certificates or other

supporting documents.

17.    <u>Liquidation of the Bonds</u>.  Following the full distribution of assets to Class 3 and

Class 5, the Noteholders' claims and rights related to the Bonds and the Indenture shall be deemed

satisfied, discharged and canceled automatically and of no force or effect, provided however that:

(i) the Indenture Trustee shall have the right to be paid its reasonably and properly incurred and

documented fees and expenses pursuant to the terms of the Indenture (including, for the avoidance

of doubt, legal fees) including any fees and expenses incurred after the date hereof giving effect to

this Order; and (ii) the charging lien of the Indenture Trustee shall survive pursuant to the terms

of the Indenture.  All positions on account of the Bonds on the books and records of the Indenture

Trustee and the Depository Trust Company ("**DTC**") shall be terminated following the full

implementation of the Plan and distribution of all assets to creditors holding claims in Class 3 and

Class 5, as set forth in the Plan.  The DTC, the Indenture Trustee, and their agents, attorneys,

successors, and assigns are hereby authorized and directed to take actions necessary to implement

the Plan, including the cancellation of the Notes when all distributions to Class 3 and Class 5 have

been made under the Plan.

18.     <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy

Code, (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other

interest in the Post-Confirmation Debtor; (b) the creation, modification, consolidation,

termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest,

or the securing of additional indebtedness by such or other means; (c) the making, assignment, or

recording of any lease or sublease; and/or (d) the making, delivery, or recording of any deed or

other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any

deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any

transaction arising out of, contemplated by, or in any way related to the Plan shall not be subject

to any stamp, real estate transfer, mortgage recording, or other similar tax to which the exemption

under section 1146 of the Bankruptcy Code applies.

**B.      The Exculpation, Voluntary Releases, Injunction, and Related Provisions**

19.     <u>Exculpation</u>.  The exculpation provisions set forth in Section 10.7 of the Plan are

hereby approved.

20.     <u>Limited Releases</u>.  The Limited Releases set forth in Section 10.8 of the Plan are

hereby approved.

21.     <u>The Injunction</u>. The injunction provisions set forth in Section 10.9 of the Plan are

hereby approved.

**C.      Effects of Plan Confirmation**

22.     <u>Administrative Claims Bar Date</u>. All requests for payment of Administrative

Claims, other than Fee Claims and Claims for fees pursuant to 28 U.S.C. § 1930, must be filed

with the Court and served on counsel for the Post-Confirmation Debtor and the Plan Administrator,

by no later than **thirty (30) days after the Effective Date** (the "**Administrative Claims Bar**

**Date**")**.**  Any Person or Entity that is required to file and serve a request for payment of an

Administrative Claim and fails to timely file and serve such a request by the Administrative Claims

Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claim

or participating in distributions under the Plan on account thereof.  The Post-Confirmation Debtor

and the Plan Administrator, and any other party with standing shall have the right to object to any

Administrative Claim by filing and serving on the appropriate parties, including the claimant, an

objection to such an Administrative Claim on or before **one hundred twenty (120) calendar days**

**after the Effective Date** (unless extended by Order of the Court) (the "**Administrative Claims**

**Objection Deadline**"). Unless the Post-Confirmation Debtor, the Plan Administrator, or another

party with standing objects to an Administrative Claim on or before the Administrative Claims

Objection Deadline, such Administrative Claim shall be deemed an Allowed Administrative Claim

in the amount requested.

   23. <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>. Pursuant

to Section 7.1 of the Plan, all pre-petition leases or executory contracts not previously rejected by

the Debtor, unless (i) specifically assumed pursuant to order(s) of the Court prior to the

Confirmation Date; or (ii) is the subject of a motion to assume or assume and assign pending on

the Confirmation Date; or (iii) is expressly identified on the Assumption Schedule, shall be deemed

rejected by the Debtor on the Confirmation Date; provided, however, that nothing in this

Confirmation Order or the Plan shall cause the rejection, breach, or termination of any contract of

insurance benefiting the Debtor or its Estate. Nothing in this Confirmation Order shall constitute

or be deemed to impair the Post-Confirmation Debtor's rights to the proceeds of any insurance the Debtor previously or current maintains.  Any pre-petition leases or executory contracts expressly identified on the Assumption Schedule shall be deemed assumed and assigned pursuant to section 365 of the Bankruptcy Code as of the Effective Date.

24.    <u>Rejection Damages Claims Bar Date</u>. Pursuant to Section 7.2 of the Plan and this Confirmation Order, if the rejection of any Executory Contract or Unexpired Lease by the Debtor as part of the Plan results in a rejection damages Claim by the other party or parties to such Executory Contract or Unexpired Lease, such a rejection damages Claim shall be barred and unenforceable against the Debtor, the Post-Confirmation Debtor,  or their property unless a proof of claim asserting such rejection damages Claim is filed with the Court and served upon the Post-Confirmation Debtor and the Plan Administrator within **thirty (30) days after the mailing of notice of entry of this Confirmation Order.** Unless otherwise ordered by the Court, any such rejection damages Claims shall be treated and solely recoverable as General Unsecured Claims under the Plan.

25.    <u>Plan Classification Controlling</u>. The classification of Claims against the Debtor for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications and amounts of Claims, if any, set forth on the ballots returned by holders of Claims in Classes 1, 2, 3, 4 and 5 in connection with voting on the Plan: (i) were set forth on the ballots solely for purposes of voting to accept or reject the Plan; (ii) do not necessarily represent, and in no event, shall be deemed to modify or otherwise affect the actual amount or classification of such Claims under the Plan for distribution purposes; and (iii) shall not be binding on the Post-Confirmation Debtor or the Plan Administrator, as applicable.

26.    <u>Setoffs</u>. The Debtor, the Post-Confirmation Debtor, or the Plan Administrator on

or after the Effective Date, as applicable, may, to the extent permitted under applicable law, setoff against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that the Post-Confirmation Debtor, on or after the Effective Date, may hold against the holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtor, the Post-Confirmation Debtor, or the Plan Administrator of any such Claims, rights, and Causes of Action that they may possess against such holder.

27.    Notice of Entry of the Confirmation Order. Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), the Post-Confirmation Debtor shall be, and hereby is, directed to file and serve a notice of entry of this Confirmation Order (the "**Confirmation Notice**") on all holders of Claims as of the Voting Record Date (as defined in the Combined Hearing Order), all Persons and Entities listed on the Debtor's creditors matrix, the U.S. Trustee and all parties that filed notices of appearance or requests for notices pursuant to Bankruptcy Rule 2002 in the Chapter 11 Case within fourteen (14) days after entry of the Confirmation Order. Such notice is adequate under the particular circumstances and no other or further notice is necessary.

28.    Notice of Effective Date. The Post-Confirmation Debtor shall be, and hereby is, directed to file and serve a notice of the occurrence of Effective Date (the "**Notice of Effective Date**") on all holders of Claims as of the Voting Record Date (as defined in the Combined Hearing Order), all Persons and Entities listed on the Debtor's creditors matrix, the U.S. Trustee and all

parties that filed notices of appearance or requests for notices pursuant to Bankruptcy Rule 2002 in the Chapter 11 Case within five (5) business days after the occurrence of the Effective Date. Such notice is adequate under the particular circumstances and no other or further notice is necessary. The Notice of Effective Date shall also serve as the notice setting forth the Administrative Claims Bar Date. Such notice of the Administrative Claims Bar Date is adequate under the particular circumstances and no other or further notice is necessary.

**D.**   **Resolution of Claims**

29.   Except as expressly provided for in the Plan or ordered by the Court prior to the Effective Date, no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or by the Bankruptcy Code or the Court has entered a Final Order allowing such Claim. Any Claim that is not an Allowed Claim shall be determined, resolved or adjudicated in accordance with the terms of the Plan.

**E.**   **Miscellaneous**

30.   Finality of Confirmation Order. This Confirmation Order is intended to be a Final Order and the period in which a notice of appeal must be filed shall commence upon the entry of this Confirmation Order on the docket of the Chapter 11 Case.

31.   Validity of Actions. If any provisions of this Confirmation Order are reversed, modified, vacated, or otherwise altered, such reversal, modification, vacatur, or alteration shall not impact the validity of any actions or obligations taken or incurred under or in connection with the Plan prior to the receipt of such an order, unless such actions or obligations are duly stayed pending appeal.

32.   Substantial Consummation. The Debtor, Post-Confirmation Debtor, and the Plan Administrator, as appropriate, are authorized to consummate the Plan at any time after the entry

of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in Article VIII of the Plan. The substantial consummation of the Plan, within the meaning of section 1101 of the Bankruptcy Code, is deemed to occur on the Effective Date.

33.      <u>Effectiveness of Confirmation Order</u>. This Confirmation Order shall be effective upon the date of its entry, and the requirement that this Confirmation Order be stayed for a period of fourteen (14) days under Bankruptcy Rule 3020(e) shall not apply.

34.      <u>Applicable Non-Bankruptcy Law</u>. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and any amendments or modifications thereto, duly made in accordance with the terms hereof, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

35.      <u>Retention of Jurisdiction</u>. Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, this Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to Article IX of the Plan.

###END OF ORDER###

Submitted by:


Rachael L. Smiley (State Bar. No.24066158)
Alex Campbell (State Bar No. 24095536)
FERGUSON BRASWELL FRASER KUBASTA PC
2500 Dallas Parkway, Suite 600
Plano, TX 75093
Phone: 972-378-9111
Fax:   972-378-9115
rsmiley@fbfk.law
acampbell@fbfk.law

**COUNSEL FOR DEBTOR AND
DEBTOR IN POSSESSION**

# Exhibit 1

**Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re** | § | **Chapter 11** |
| | § | |
| **LEADING LIFE SENIOR LIVING, INC.,** | § | **Case No. 22-42784-MXM** |
| | § | |
| | § | |
| **Debtor.** | § | |
| | § | |

**DEBTOR'S PLAN OF LIQUIDATION OF LEADING LIFE SENIOR LIVING, INC.**
**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Dated: May 11, 2023

**FERGUSON BRASWELL**
**FRASER KUBASTA PC**

By: /s/ *Rachael L. Smiley*
Rachael L. Smiley (State Bar. No.24066158)
Alex Campbell (State Bar No. 24095536)
2500 Dallas Parkway, Suite 600
Plano, TX 75093
Phone: 972-378-9111
Fax:   972-378-9115
rsmiley@fbfk.law
acampbell@fbfk.law

**COUNSEL FOR**
**DEBTOR IN POSSESSION**

# Table of Contents

Page

INTRODUCTION ...................................................................................................... 1

ARTICLE I DEFINITIONS ......................................................................................... 1

ARTICLE II PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE AND
PRIORITY TAX CLAIMS ........................................................................................... 8

    2.2    Treatment of Administrative Claims Other Than Fee Claims ....................... 8

    2.3    Treatment of Fee Claims ............................................................................. 8

    2.4    Treatment of Priority Tax Claims ................................................................ 8

ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS ............................. 9

ARTICLE IV TREATMENT OF CLAIMS ................................................................... 9

    4.2    Treatment of Class 1 Claims - Priority Non-Tax Claims ............................. 9

    4.3    Treatment of Class 2 Claims - Secured Tax Claims .................................... 9

    4.4    Treatment of Class 3 Claims – Secured Bond Claims ................................. 9

    4.5    Treatment of Class 4 – Other Secured Claims ........................................... 10

    4.6    Treatment of Class 5 – General Unsecured Claims. .................................... 10

    4.7    Disallowance of Certain Charges ............................................................... 10

    4.8    Voting Class ............................................................................................... 10

    4.9    Acceptance by Impaired Classes ................................................................ 10

    4.10    How to Vote .............................................................................................. 11

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN ............................. 11

    5.1    Corporate Action ....................................................................................... 11

    5.2    Plan Administrator ..................................................................................... 11

    5.3    Resignation, Death, or Removal ................................................................ 12

    5.4    Winding Up Affairs ................................................................................... 13

    5.5    Release of Liens ......................................................................................... 13

    5.6    Causes of Actions ...................................................................................... 13

    5.7    Formation and Powers of the Oversight Committee .................................... 14

    5.8    Dissolution ................................................................................................ 15

    5.9    Insurance ................................................................................................... 15

    5.10    Professional Fees and Expenses ............................................................... 15

ARTICLE VI DISTRIBUTIONS ................................................................................. 16

    6.1    Disbursing Agent ....................................................................................... 16

i

6.2    Expenses of the Disbursing Agent ........................................................................... 16

6.3    Rights and Powers of Disbursing Agent ................................................................ 16

6.4    Delivery of Distributions ....................................................................................... 16

6.5    Record Date for Distributions ............................................................................... 16

6.6    Reserve for Plan Expenses .................................................................................... 16

6.7    Objections to Claims .............................................................................................. 17

6.8    Distributions on Disputed Claims ......................................................................... 17

6.9    Disputed Claim Reserves ....................................................................................... 17

6.10   Unclaimed Property ............................................................................................... 17

6.12   Withholding Taxes ................................................................................................. 18

6.13   Fractional Cents ..................................................................................................... 18

6.14   Payments of Less than Twenty-Five Dollars ....................................................... 18

6.15   Means of Cash Payment ......................................................................................... 18

6.16   Setoffs .................................................................................................................... 18

ARTICLE VII UNEXPIRED LEASES AND EXECUTORY CONTRACTS ........................... 19

ARTICLE VIII CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN ........... 19

8.1    Conditions to Consummation. .............................................................................. 19

The Plan shall not become effective unless and until each of the following conditions has been
satisfied: ............................................................................................................................ 19

8.2    Waiver of Conditions ............................................................................................. 19

8.3    Effect of Failure of Condition ............................................................................... 19

ARTICLE IX RETENTION OF JURISDICTION ...................................................................... 20

ARTICLE X MISCELLANEOUS PROVISIONS ....................................................................... 21

10.1   Pre-Confirmation Modification ............................................................................. 21

10.2   Post-Confirmation Immaterial Modification ......................................................... 21

10.3   Post-Confirmation Material Modification ............................................................. 21

10.4   Withdrawal or Revocation of the Plan .................................................................. 21

10.5   Binding Effect ........................................................................................................ 21

10.6   Successors and Assigns .......................................................................................... 21

10.7   **Exculpation** ............................................................................................................ 22

10.8   **Limited Releases** .................................................................................................. 22

10.9   **Injunction** ............................................................................................................. 22

10.10  Governing Law ...................................................................................................... 23

10.11  United States Trustee Fees .................................................................................... 23

10.12  Notices ................................................................................................................... 23

10.13    Non-Voting Equity Securities ............................................................................ 24

10.14    Retiree Benefits ................................................................................................. 24

10.15    Saturday, Sunday, or Legal Holiday ................................................................. 24

10.16    Section 1146 Exemption .................................................................................... 24

10.17    Severability ....................................................................................................... 24

10.18    Headings ............................................................................................................ 25

10.19    Waiver of Stay ................................................................................................... 25

ARTICLE XI CONFIRMATION REQUEST ............................................................................ 25

## INTRODUCTION

Leading Life Senior Living, Inc. ("**Debtor**") hereby proposes the following Plan of Liquidation for the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

The Debtor seeks to consummate the Liquidation[1] on the Effective Date of the Plan.  In the event all conditions precedent to the Effective Date for the Plan necessary to consummate the Liquidation are not satisfied or waived by the Debtor, the Plan shall be of no force and effect.

The Plan sets forth a proposal for the satisfaction of all Claims against the Debtor.  Along with the Plan, Creditors entitled to vote will receive a Ballot for voting on the Plan and a Disclosure Statement that provides information concerning the Debtor and the Plan.

The Disclosure Statement accompanying the Plan, and the exhibits thereto, include a discussion of the Debtor's history, business, operations, a summary and analysis of this Plan, the Liquidation, a summary of what Creditors can expect to receive under the Plan, a summary of the procedures and voting requirements necessary for confirmation of the Plan and a discussion of certain alternatives to the Plan in the event that the Plan is not confirmed. All Holders of Claims should read the Disclosure Statement and the Plan carefully—and consult with their counsel and other applicable professionals—before voting to accept or reject the Plan.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number and dollar amount of Creditors, and the Bankruptcy Court must find that the Plan meets the applicable legal standards before it can be confirmed. If the Plan is not confirmed, the Bankruptcy Court may order the case dismissed or converted to a liquidating case under Chapter 7 of the Bankruptcy Code, or other parties in interest may propose a different plan.

As indicated in the Disclosure Statement, the Debtor recommends that all holders of impaired Claims that are entitled to vote accept the Plan.

## ARTICLE I
## DEFINITIONS

1.1    As used in this Plan, the following terms shall have the respective meanings specified below.  Unless otherwise indicated, the singular shall include the plural.

1.2    "**Administrative Claim**" means a Claim under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code, for costs or expenses of administration of the Chapter 11 Case, including, without limitation, any actual and necessary expenses of operating the business of the Debtor or preserving the estate, and any and all fees and expenses of Professionals to the extent allowed by the Bankruptcy Court under Sections 330, 331, or 503 of the Bankruptcy Code.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in Article I of this Plan.

1.3     "**Allowed Claim**" or "Allowed [ ] Claim" means: (a) any Claim, proof of which is/was filed with the Bankruptcy Court on or before the applicable Bar Date, or which has been or hereafter is scheduled by the Debtor as liquidated in amount and not disputed or contingent and which, in either case, is a Claim as to which no objection to the allowance thereof has been filed within the applicable period of limitation (if any) for objection to Claims fixed by the Bankruptcy Court, or as to which any objection has been determined by an order or judgment of the Bankruptcy Court (allowing such Claim in whole or in part) that is no longer subject to appeal or certiorari proceedings, and as to which no appeal or certiorari proceeding is pending, or (b) a Claim that is allowed (i) in a Final Order or (ii) pursuant to the terms of the Plan.

1.4     "**Avoidance Actions**" means any and all avoidance, recovery, subordination or similar actions or remedies that may be brought by and on behalf of the Debtor, Post-Confirmation Debtor or the Plan Administrator on behalf of the Estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies arising under chapter 5 of the Bankruptcy Code.

1.5     "**Assets**" means any and all real property or personal property assets, rights or interests of Debtor, whether tangible or intangible, and any proceeds realized therefrom, including without limitation, all cash of the Debtor and any right, claim, or cause of action, belonging to the Debtor or its estate.

1.6     "**Assumption Schedule**" means the schedule of Executory Contracts and Unexpired Leases in the Plan Supplement, as may be amended from time to time, setting forth certain Executory Contracts and Unexpired Leases for assumption and assignment to the Post-Confirmation Debtor as of the Effective Date under Section 365 of the Bankruptcy Code.

1.7     "**Ballot**" means the form or forms of ballot that will be distributed along with the Disclosure Statement to Holders of Allowed Claims in classes that are Impaired under the Plan and entitled to vote, with which the Holders of Impaired Claims may use to vote to accept or reject the Plan.

1.8     "**Bankruptcy Code**" means the United States Bankruptcy Code, 11 U.S.C. §§ 101 et. seq., as now in effect or hereafter amended with regard to the Chapter 11 Case.

1.9     "**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

1.10    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the Local Rules of the United States Bankruptcy Court for the Northern District of Texas.

1.11    "**Bar Date**" means the date (or dates) set by the Bankruptcy Court as the last day for filing proofs of Claim or Administrative Claims, as applicable, against the Debtor.

1.12    "**Board of Directors**" means Christopher McEntee, Adam Hollingsworth and Jeramy Ragsdale, together and each, solely in their capacities as members of the Debtor's Board of Directors.

1.13    **"Bond Financing Documents"** means the Trust Indenture dated as of December 1, 2017, by and between The Oklahoma Development Finance Authority, as issuer, and UMB Bank, N.A., as trustee.

1.14    **"Business Day"** means any day other than a Saturday, Sunday, legal holiday (as such term is defined in Bankruptcy Rule 9006) or any other day that the Bankruptcy Court is closed.

1.15    **"Cash"** means cash and cash equivalents, including, but not limited to, wire transfers, checks, and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

1.16    **"Cash Collateral"** means all "cash collateral" of the Indenture Trustee, with respect to the Indenture Trustee's collateral within the meaning of Section 363(a) of the Bankruptcy Code, including, without limitation, the Debtor's cash and cash on deposit in any deposit account or securities account of the Debtor that is subject to a perfected security interest of the Indenture Trustee.

1.17    **"Causes of Action"** means any claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counterclaims, offsets, or setoffs of any kind or character whatsoever, in each case whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, under statute, in contract, in tort, in law, or in equity, or under any other theory of law, federal or state, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date now owned or hereafter acquired by the Debtor and/or its Estate.

1.18    **"Chapter 11 Case"** means the above-captioned Chapter 11 Case pending for the Debtor.

1.19    **"Claim"** means a claim as defined in Section 101(5) of the Bankruptcy Code or any portion thereof.

1.20    **"Class"** means a category of Claims or Interests that are substantially similar in nature to each other, as classified pursuant to the Plan.

1.21    **"Confirmation"** means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

1.22    **"Confirmation Date"** means the date of entry of an order of the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

1.23    **"Confirmation Hearing"** means that hearing held before the Bankruptcy Court to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.24    "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.25    "**Creditor**" means any person or entity having a Claim against the Debtor, including without limitation a Claim that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

1.26    "**Debtor**" means Leading Life Senior Living, Inc.

1.27    "**Debtor in Possession**" means the Debtor in its capacity and with the status and rights conferred by Sections 1107 and 1108 of the Bankruptcy Code.

1.28    "**DIP Lender**" means any special purpose vehicle affiliated with Berkeley Alternative Income Fund I, LLC ("BAIF") for the purpose of providing post-petition financing to the Debtor pursuant to the *Final Order Approving the Debtor's Emergency Motion for Entry of Interim and Final Orders (A) Authorizing the Debtor to Obtain Post-Petition Financing; (B) Authorizing the Use of Cash Collateral; and (C) Granting Adequate Protection to UMB Bank, N.A., as Indenture Trustee* [Docket No. 88].

1.29    "**Disbursing Agent**" means, as applicable, (a) the Plan Administrator; (b) such Entity selected by the Plan Administrator to make or facilitate distributions under the Plan; or (c) any other Entity in its capacity as Disbursing Agent under Article VI of this Plan.

1.30    "**Disclosure Statement**" means the disclosure statement respecting the Plan, as approved by the Bankruptcy Court as containing adequate information in accordance with Section 1125 of the Bankruptcy Code, all exhibits and annexes thereto, and any amendments or modifications thereof.

1.31    "**Disputed Claim**" means any Claim not otherwise Allowed or paid pursuant to the Plan or an order of the Bankruptcy Court (a) that has been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed, and that has not been resolved by written agreement of the parties or a Final Order, (b) proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of Claim was not timely or properly filed, (c) that is disputed in accordance with the provisions of the Plan, or (d) as to which the Debtor or the Plan Administrator, as applicable, have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or that is otherwise disputed by the Debtor or the Plan Administrator, as applicable, in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order.

1.32    "**Effective Date**" means the first Business Day after the date on which each of the conditions set forth in Section 8.1 of the Plan has been satisfied or waived (if waivable) in accordance with Section 8.2 of the Plan.

1.33    "**Entity**" has the meaning set forth in Section 101 of the Bankruptcy Code.

1.34    **"Estate"** means the estate of the Debtor created under Section 541 of the Bankruptcy Code.

1.35    **"Exculpated Parties"** means collectively, the Released Parties.

1.36    **"Executory Contract"** means a contract to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

1.37    **"Exhibit"** means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time).

1.38    **"Fee Claim"** means a Claim by a Professional for compensation, indemnification or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) or 1103(a) of the Bankruptcy Code in connection with the Chapter 11 Case.

1.39    **"Final Order"** means an order entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, as to which (i) no appeal, certiorari proceeding, or other review or rehearing has been requested or is still pending, and (ii) the time for filing a notice of appeal or petition for certiorari or further review or rehearing has expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

1.40    **"General Unsecured Claim"** means any Claim against the Debtor other than an Administrative Claim, Priority Tax Claim, Priority Claim, or Secured Claim.

1.41    **"Holder"** means an Entity holding a Claim.

1.42    **"Impaired"** means with respect to a Claim or a Class of Claims, a Claim, or a Class of Claims that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.43    **"Indenture Trustee"** means UMB Bank, N.A. as trustee of that certain Trust Indenture dated as of December 1, 2017, by and between The Oklahoma Development Finance Authority, as issuer, and UMB Bank, N.A., as trustee.

1.44    **"Lien"** means a lien as defined in § 101(37) of the Bankruptcy Code.

1.45    **"Liquidation"** means the liquidation of the Assets to be effectuated by the Plan.

1.46    **"Net Proceeds"** means all Cash proceeds realized from Causes of Action and Liquidation, less the fees and any other costs associated with the collection of such proceeds.

1.47    **"Oversight Committee"** means the Committee charged with overseeing the actions of the Plan Administrator pursuant to and in accordance with the terms of the Plan.

1.48    **"Person"** means a natural person or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company,

business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal entity.

1.49    "**Petition Date**" means November 18, 2022, the date upon which the Debtor filed a petition under Chapter 11 of the Bankruptcy Code.

1.50    "**Plan**" means this Plan of Liquidation of Leading Life Senior Living, Inc. Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtor, all exhibits hereto, and any amendments or modifications hereof.

1.51    "**Plan Administrator**" means GlassRatner Capital & Advisory Group LLC d/b/a B. Riley Advisory Services. The Plan Administrator shall be the representative of the estate for the purposes of administering the Plan. The term Plan Administrator shall also include any successor plan administrator duly appointed.

1.52    "**Plan Expenses**" means all actual, reasonable, and necessary costs and expenses to be incurred after the Effective Date in connection with the administration of the Plan at the direction of the Plan Administrator.

1.53    "**Plan Expense Reserve Fund**" means the segregated account(s) into which all reserved cash for Plan Expenses provided for in the Plan shall be deposited on the Effective Date or as soon thereafter as is practicable.

1.54    "**Plan Schedule**" means a schedule annexed to this Plan or an appendix to the Disclosure Statement (as amended, supplemented or otherwise modified from time to time) and which shall be deemed to include any documents filed as part of the Plan Supplement.

1.55    "**Plan Supplement**" means collectively, the compilation of documents, forms of documents and/or term sheets relevant to the implementation of the Plan, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including, without limitation, the Exhibits and Plan Schedules, to be filed with the Bankruptcy Court at least seven (7) days prior to the Confirmation Hearing, all of which are incorporated by reference into, and are an integral part of, this Plan.

1.56    "**Post-Confirmation Debtor**" means the Debtor in its post-Effective Date status as provided for in this Plan.

1.57    "**Priority Claim**" means any Claim against the Debtor other than an Administrative Claim or Priority Tax Claim entitled to priority in payment under Section 507(a) of the Bankruptcy Code.

1.58    "**Priority Tax Claim**" means any Claim for taxes against the Debtor, including without limitation any interest and penalties due thereon, entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.59    "**Professionals**" means those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be

compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Sections 503(b)(4) and (5) of the Bankruptcy Code.

1.60    "**Property**" means all property of the Debtor's estate of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by the Debtor, or acquired by the Debtor's estate, as defined in Section 541 of the Bankruptcy Code.

1.61    "**Pro Rata**" means, as of any certain date, with respect to any Allowed Claim in any Class, the proportion that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

1.62     "**Released Parties**" means the (a) the Board of Directors; (b) GlassRatner Capital & Advisory Group LLC d/b/a B. Riley Advisory Services; (c) Ferguson Braswell Fraser Kubasta PC; (d) Polsinelli PC; (e) Faegre Drinker Biddle & Reath, LLP; (f), the Indenture Trustee; (g) the DIP Lender and (h) each of their respective agents, representatives, successors and assigns.

1.63    "**Schedules**" means the Debtor's Schedules of Assets and Liabilities filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007 as they may be amended or supplemented from time to time pursuant to Bankruptcy Rules 1007 and 1009.

1.64    "**Secured Claim**" means all or that portion of a debt existing on the Petition Date, as finally allowed and approved by the Bankruptcy Court, to the extent that such debt is not greater than the value of the assets of the Debtor that the Bankruptcy Court finds are valid security for such debt.

1.65    "**Secured Bond Claims**" shall mean those claims receiving treatment pursuant to Section 4.4 herein.

1.66    "**Secured Bond Claim Amount**" means the amount of the Class 3 Secured Bond Claims, which consist of the Indenture Trustee's secured Claim and unsecured deficiency Claim, totaling not less than $33,183,600.60, which continues to accrue interest, fees, costs (including all costs and fees of Indenture Trustee's professionals). For avoidance of doubt, such amounts shall be added to the aggregate Secured Bond Claim Amount until this Chapter 11 Case is closed by the Bankruptcy Court.

1.67    "**Securities Act**" means the Securities Act of 1933, as now in effect or hereafter amended, and any similar federal, state or local law.

1.68    "**Transactions**" means the transaction necessary to effectuate the Plan.

1.69    "**Unexpired Lease**" means a lease of nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

1.70    "**Unimpaired**" means any Claim that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.71    **"United States Trustee"** means the office of the United States Trustee for Region 6.

1.72    "**Voting Deadline**" means the deadline established by Final Order of the Bankruptcy Court for receipt of Ballots voting to accept or reject the Plan.

1.73    All terms not expressly defined herein have the respective meanings given such terms in Section 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code, the Plan, or the Disclosure Statement. Defined terms importing the plural only shall also include the singular where the context requires. Unless otherwise specified herein, any reference to an Entity as a Holder of a Claim includes that Entity's successors, assigns, and affiliates. The rules of construction set forth in Section 102 of the Bankruptcy Code will apply. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II
## PROVISIONS FOR PAYMENT OF ALLOWED
## ADMINISTRATIVE AND PRIORITY TAX CLAIMS

2.1    Administrative Claims and Priority Tax Claims are not classified in this Plan.  The treatment of and consideration to be received by Holders of Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to this Article II of the Plan shall be in full and complete satisfaction, settlement, release, and discharge of such Claims. The Debtor's obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

2.2    Treatment of Administrative Claims Other Than Fee Claims.  Except to the extent the Holder of an Allowed Administrative Claim agrees otherwise, each Holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim the full amount thereof, without interest, in Cash, as soon as practicable after the later of (i) the Effective Date or (ii) the date on which such Claim becomes an Allowed Claim.

2.3    Treatment of Fee Claims.  All Professionals seeking allowance by the Bankruptcy Court of a Fee Claim (a) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by a date that is not later than the date that is thirty (30) calendar days after the Effective Date; and (b) shall be paid by the Plan Administrator, in such amounts as are approved by the Bankruptcy Court (i) upon the later of (x) the Effective Date and (y) five (5) calendar days after the date upon which the order relating to the allowance of any such Fee Claim is entered, or (ii) upon such other terms as may be mutually agreed upon between the holder of such Fee Claim and the Plan Administrator.

2.4    Treatment of Priority Tax Claims.  Each Holder of an Allowed Priority Tax Claim shall be paid in respect of such Allowed Priority Tax Claim either (a) the full amount thereof, without post-petition interest or penalty, in Cash, as soon as practicable after the later of (i) the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Claim or (b) such lesser amount as the Holder of an Allowed Priority Tax Claim and the Debtor might otherwise agree or (c) at the election of the Post-Confirmation Debtor, in accordance with Section

1129(a)(9)(C) of the Bankruptcy Code, in Cash, in up to twenty equal quarterly installments (and in such event, interest shall be paid on the unpaid portion of such Allowed Priority Tax Claims at a rate to be agreed to by the Plan Administrator and the appropriate governmental unit, or, if they are unable to agree, as determined by the Bankruptcy Court), commencing as soon as practicable after the later of (i) the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Claim.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1     Administrative Claims and Priority Tax Claims are unclassified. For purposes of this Plan, all other Claims and Interests are classified as follows:

| Class | Status | Voting Rights |
| --- | --- | --- |
| Class 1 – Priority Non-Tax Claims | Impaired | Entitled to Vote |
| Class 2 – Secured Tax Claims | Impaired | Entitled to Vote |
| Class 3 – Secured Bond Claims | Impaired | Entitled to Vote |
| Class 4 – Other Secured Claims | Impaired | Entitled to Vote |
| Class 5 – General Unsecured Claims | Impaired | Entitled to Vote |

## ARTICLE IV
## TREATMENT OF CLAIMS

4.1     The Debtor's obligations in respect of such Claims shall be satisfied in accordance with the terms of this Plan.

4.2     Treatment of Class 1 Claims - Priority Non-Tax Claims.  Class 1 Claims are Impaired.  To the extent that such Class 1 Claims exist on the Effective Date, each Holder of an Allowed Class 1 Claim shall receive payment on account of such Claim from monies, if available, that are not part of the Indenture Trustee's Cash Collateral as soon as practicable after the later of (i) the Effective Date, and (ii) the date on which such Claim becomes an Allowed Claim or (b) as otherwise agreed by the Holder of such Allowed Class 1 Claim. The Holders of Claims in this Class are entitled to vote.

4.3     Treatment of Class 2 Claims - Secured Tax Claims.  Class 2 Claims are Impaired. To the extent that such Class 2 Claims exist on the Effective Date, each Holder of an Allowed Class 2 Claim shall receive payment on account of such Claim from monies, if available, that are not part of the Indenture Trustee's Cash Collateral as soon as practicable after the later of (i) the Effective Date, and (ii) the date on which such Claim becomes an Allowed Claim or (b) as otherwise agreed by the Holder of such Allowed Class 2 Claim. The Holders of Claims in this Class are entitled to vote.

4.4     Treatment of Class 3 Claims – Secured Bond Claims.  Class 3 Claims are Impaired. The Secured Bond Claims are secured claims to the extent of the value of the Indenture Trustee's Lien on the Assets, and the Secured Bond Claims are an unsecured deficiency Claim to the extent that the value of the Indenture Trustee's Lien is less than the Secured Bond Claim Amount.   The Indenture Trustee shall receive on behalf of Holders of Claims in Class 3 on account of such

9

Claims Cash on the Effective Date or as soon as practicable thereafter.  The Indenture Trustee shall disburse the funds received pursuant to this Section in accordance with the Bond Financing Documents.

For the avoidance of doubt, a holder of the Secured Bond Claim may also receive treatment as the Holder of a Class 5 General Unsecured Claim on account of thier unsecured deficiency Claim.

The Holders of Claims in this Class are entitled to vote.

4.5    Treatment of Class 4 – Other Secured Claims.  Class 4 Claims are Impaired. Class 4 Other Secured Claims consist of all Allowed Secured Claims that are not Secured Bond Claims, and are not Secured Tax Claims. An Allowed Claim of a Creditor that is secured by a Lien on property in which the Estate has an interest, or that is subject to setoff under section 553 of the Bankruptcy Code, is a Secured Claim to the extent of the value of such Creditor's Lien on or interest in Estate property, and an unsecured deficiency Claim to the extent that the value of the claim exceed such Creditor's Lien or interest in Estate property, or the extent of such Creditor's right of setoff.  To the extent that such Class 4 Claims exist on the Effective Date, each Holder of an Allowed Class 4 Claim shall receive payment on account of such Claim from monies, if available, that are not part of the Indenture Trustee's Cash Collateral as soon as practicable after the later of (i) the Effective Date, and (ii) the date on which such Claim becomes an Allowed Claim or (b) as otherwise agreed by the Holder of such Allowed Class 4 Claim. The Holders of Claims in this Class are entitled to vote.

4.6    Treatment of Class 5 – General Unsecured Claims. Class 5 Claims are Impaired. Class 5 consists of all Allowed prepetition Claims that are not contained in Class 1, 2, 3, or 4. For the avoidance of doubt, holders of Secured Bond Claims may also receive treatment for their unsecured deficiency claim as a Class 5 General Unsecured Claim.  Claims in Class 5, if Allowed, in full and final satisfaction of such Claims, shall be paid in Cash on a Pro-Rata basis, subject to Plan Expenses, from the Net Proceeds and from any remaining value of the Assets of the Estate following the satisfaction of Claims in Classes 1, 2, 3, and 4.  To the extent that holders of Secured Bond Claims receive treatment as a Class 5 General Unsecured Claim, such amounts shall be transferred to the Indenture Trustee for disbursement in accordance with the Bond Financing Documents.

4.7    Disallowance of Certain Charges.  All penalties, default interest, loan fees, or late charges that may have accrued or will become due prior or subsequent to the Effective Date are disallowed.

4.8    Voting Class.  Each Holder of an Allowed Claim in Classes, 1, 2, 3 and 4 are entitled to vote either to accept or to reject the Plan. Only those votes cast by Holders of Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation.

4.9    Acceptance by Impaired Classes.  An Impaired Class of Claims shall have accepted the Plan if: (a) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the Holders (other than any Holder designated under

Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

4.10    How to Vote.  A form of Ballot is being provided to creditors in Classes 1, 2, 3,4 and 5 that hold Allowed Claims by which Creditors in such Class may vote their acceptance or rejection of the Plan. The Ballot for voting on the Plan gives Creditors one important choice to make with respect to the Plan—Creditors can vote for or against the Plan. To vote on the Plan, Creditors must complete the Ballot, and return it in accordance with the instructions.  The Debtor, through its professionals, will count the Ballots.

**ARTICLE V**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

5.1    Corporate Action.  On the Effective Date and automatically and without further action, (i) each existing member of the Board of Directors of the Debtor will resign or be terminated by the Plan Administrator and (ii) the Plan Administrator shall be deemed the sole officer, and director of the Post-Confirmation Debtor. The Plan will be administered by the Plan Administrator, and all actions taken thereunder in the name of the Post-Confirmation Debtor shall be taken through the Plan Administrator.

5.2    Plan Administrator.  On the Effective Date, the Plan Administrator shall begin acting for the Post-Confirmation Debtor in the same fiduciary capacity as applicable to a board of directors, subject to the provisions hereof. The Plan Administrator shall be compensated at its reasonable normal and customary rates and may be paid, after not less than ten (10) days prior notice to the Indenture Trustee and, absent written opposition by the Indenture Trustee in such period, without further order of the Bankruptcy Court in accordance with Section 5.7(c). The Plan Administrator shall be entitled to reimbursement for its actual, reasonable, and necessary expenses incurred in connection with the performance of its duties, including, but not limited to, attorneys' fees and expenses, accounting fees and expenses and other professional fees and expenses, without the need for further Bankruptcy Court approval. The Plan Administrator shall not be liable for any action it takes or omits to take that it believes in good faith to be authorized or within its rights or powers, absent gross negligence or willful misconduct on its part. All distributions to be made to Creditors under the Plan shall be made by the Plan Administrator, who shall deposit and hold all Cash in trust for the benefit of Creditors (including Professionals) receiving distributions under the Plan. Subject to the review of the Oversight Committee as described in Section 5.7 of this Plan, the duties and powers of the Plan Administrator shall include the following:

(a)    To conduct an orderly liquidation of the Assets including taking any action that the Plan Administrator may deem necessary and appropriate to maximize the value of and return on the Post-Confirmation Debtor's Assets;

(b)    To exercise all power and authority that may be exercised, to commence all proceedings (including the power to continue any actions and proceedings that may have

11

been commenced by the Debtor prior to the Effective Date) that may be commenced, and to take all actions that may be taken by any officer or director of the Debtor with like effect as if authorized, exercised, and taken by unanimous action of such officers, directors, and shareholders, including consummating the Plan and all transfers thereunder on behalf of the Post-Confirmation Debtor;

(c)    To maintain all accounts, make distributions, and take other actions consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Post-Confirmation Debtor;

(d)    To take all steps necessary to terminate the corporate existence of the Debtor;

(e)    To prosecute objections to Claims and compromise or settle any Claims (disputed or otherwise);

(f)    To prosecute any and all Causes of Action and compromise or settle any Causes of Action;

(g)    To collect the accounts receivable, or other amounts due, if any, of the Debtor;

(h)    To employ and compensate any and all such professionals as the Plan Administrator, in his or her sole discretion, deems reasonably necessary to perform his or her duties under the Plan, including any professional that represented a party in the Chapter 11 Case, without further order of the Bankruptcy Court; and

(i)    To take all other actions not inconsistent with the provisions of the Plan that the Plan Administrator deems reasonably necessary or desirable in connection with the administration of the Plan, including, without limitation, filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Case.

5.3    <u>Resignation, Death, or Removal</u>. The Plan Administrator may be removed by order of the Bankruptcy Court upon notice and motion by an Oversight Committee member for good cause shown. In the event of removal for good cause shown of the Plan Administrator, or in the event of the death or incapacity of the Plan Administrator, the Oversight Committee shall appoint a successor upon notice, motion, and approval of the Bankruptcy Court. In the event of the resignation of the Plan Administrator, the Plan Administrator shall nominate a successor, which nomination shall be deemed accepted by the Oversight Committee and shall be deemed effective upon the filing with the Bankruptcy Court of a Notice of Appointment of Successor Plan Administrator. The successor Plan Administrator without any further act shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor. In the absence of any pending action to remove a Plan Administrator for good cause, any resigning Plan Administrator, without further action, order, or decree, shall be deemed released by the Post-Confirmation Debtor from any and all Claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (including those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising in law, equity,

or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence in connection with the Chapter 11 Case; provided, however, that the foregoing shall not operate as a waiver of or release from any causes of action arising out of the willful misconduct or the gross negligence of the Plan Administrator unless the Plan Administrator acted in good faith and in a manner that the Plan Administrator reasonably believed to be in or not opposed to the best interests of the Post-Confirmation Debtor, and with respect to any criminal action or proceeding, had no reasonable cause to believe the Plan Administrator's conduct was unlawful.

5.4     Winding Up Affairs.  On and after the Effective Date, the Plan Administrator may, in the name of the Post-Confirmation Debtor, and after consultation with the Indenture Trustee and in the absence of any Indenture Trustee opposition after such consultation, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, the Plan Administrator may, without application to or approval of the Bankruptcy Court, pay the charges that he or she incurs after the Effective Date for professional fees and expenses that, but for the occurrence of the Effective Date, would constitute Allowed Fee Claims or Allowed Administrative Claims. The Plan Administrator shall provide the Indenture Trustee such information as the Indenture Trustee may request from time to time.

5.5     Release of Liens.  Except with respect to claims of the Indenture Trustee or as otherwise expressly provided in the Plan or in any contract, instrument, or other agreement or document created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens, or other security interests against the Property of the Debtor's estate shall be released, and all the right, title, and interest of any Holder of such mortgages, deeds of trust, liens, or other security interests shall revert to the Post-Confirmation Debtor and its successors and assigns. The Indenture Trustee's outstanding Liens and security interests against the Property of the Debtor's Estate shall be released upon the distribution in full of all Property of the Debtor.

5.6     Causes of Actions.  On the Effective Date, any right, claim, or cause of action belonging to the Debtor or its Estate against any Person or Entity, including, without limitation, any Causes of Action, shall be vested in and retained by the Post-Confirmation Debtor. The Plan Administrator, in consultation with the Indenture Trustee, shall pursue, settle, or release all reserved Causes of Action, as appropriate, in accordance with the best interest of and for the benefit of the Creditors entitled to receive distributions under the Plan.

Unless a Cause of Action against any Entity is expressly waived, relinquished, released, discharged, compromised or settled in the Plan or any Final Order (including the Confirmation Order), all Cause of Actions are expressly reserved and shall be vested in and retained by the Post-Confirmation Debtor pursuant to the Plan, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to any Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, the Plan or the Confirmation Order or any other Final Order (including the Confirmation Order). In addition, the Plan Administrator reserves the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

An initial list of the Causes of Action shall be included in the Plan Supplement. The failure to list a claim, right, cause of action, suit or proceeding shall not constitute a waiver or release by the Debtor or its Estate of such claim, right of action, suit or proceeding. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Causes of Action against them as any indication that the Plan Administrator will not pursue any and all available Causes of Action against them. While the initial list included in the Plan Supplement provides notice to certain Persons and Entities of the existence of Causes of Action against them, it is not intended to limit the Causes of Action the Plan Administrator may prosecute as others may be discovered after the Plan Supplement is filed.

5.7     Formation and Powers of the Oversight Committee.

(a)     The Indenture Trustee shall be entitled to select up to three (3) members of the Oversight Committee and file a notice of such selection with the Bankruptcy Court. As of the Effective Date, the Oversight Committee shall be deemed to have been formed. In the event of the resignation or inability to perform for any reason of any member of the Oversight Committee after the Effective Date, the remaining members of the Oversight Committee shall have the right to designate a successor. If an Oversight Committee member is a Holder of a Claim against the Debtor, and assigns its Claim or releases the Debtor from payment of the balance of its Claim, such act shall constitute a resignation of such member from the Oversight Committee. Until a vacancy on the Oversight Committee is filled, the Oversight Committee shall function in its reduced number.

(b)     The individual members of the Oversight Committee shall serve without compensation, except that they shall be entitled to reimbursement of reasonable, actual and necessary out-of-pocket expenses (which shall not include any professional fees and expenses for attorneys or other professionals retained by an individual committee member) from the Plan Administrator.

(c)     Following the Effective Date, the powers and duties of the Oversight Committee shall include (i) approving any release or indemnity in favor of any third party granted or agreed to by the Plan Administrator; (ii) authorizing the Plan Administrator to commence any Causes of Action in excess of $500,000; (iii) approving the settlement of any Causes of Action in excess of $250,000; (iv) approving the allowance of any Disputed Claim in excess of $500,000; (v) approving the sale of any assets by the Plan Administrator in excess of $250,000; (vi) reviewing financial information relating to the Post-Confirmation Debtor, which shall be promptly provided by the Plan Administrator upon request by the Oversight Committee; (vii)  monitoring distributions to Creditors; (viii) taking such other actions as it deems necessary and appropriate with respect to the implementation of the Plan; (ix) prior to the payment of each invoice for services rendered by the Plan Administrator in his, her, or its capacity as Plan Administrator, reviewing and approving each such invoice, which invoice shall be deemed approved if not objected to by the Oversight Committee within 10 days of receipt; (x) removing and replacing the Plan Administrator in accordance with Section 5.3 of this Plan; and (xi) performing such additional functions as may be provided for by further order of the Court entered after the Effective Date.

(d)     Following all payments being made to the holders of Allowed Claims under this Plan and the closing of the Chapter 11 Case, the Oversight Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations to and arising from their service as Oversight Committee members.

5.8     Dissolution.  As soon as practicable after the Effective Date and consistent with the orderly sale and liquidation of the Assets, the Debtor shall be dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith, provided, however, that the Plan Administrator shall be authorized (a) to continue such operations as may be necessary to effect the orderly liquidation of the Assets, (b) to file the Debtor's final tax returns, (c) to file and shall file with the official public office for keeping corporate records in the Debtor's state of incorporation and/or country of incorporation, a certificate of dissolution or equivalent document, and (d) to perform such other and further activities consistent with the Plan. Except to the extent that operations continue consistent with this Section and the Plan, from and after the Effective Date, the Debtor (i) for all purposes shall be deemed to have withdrawn its business operations from any state or country in which it was previously conducting or is registered or licensed to conduct its business operations, and the Debtor shall not be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal, (ii) shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

5.9     Insurance.   On or as soon as practicable after the Effective Date, the Post-Confirmation Debtor and the Plan Administrator may obtain a fidelity bond or similar insurance in the estimated amount of the Assets on the Effective Date. In addition, the Plan Administrator may obtain (if available) directors' and officers' liability insurance or errors and omission insurance (or equivalent insurance).

5.10    Professional Fees and Expenses.

(a)     Each Professional retained or requesting compensation in the Chapter 11 Case, pursuant to Sections 327, 328, 330, 331, or 503(b) of the Bankruptcy Code and in connection with fees incurred prior to the Effective Date, shall file an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Case before the thirtieth (30th) day after the Effective Date.

(b)     Professionals that perform post-Effective Date services for the Post-Confirmation Debtor or the Plan Administrator shall provide monthly invoices to the Plan Administrator describing the services rendered and the fees and expenses incurred in connection therewith, on or before the 20th day following the end of the calendar month during which such services were performed. Professionals who tender such invoices shall be paid by the Plan Administrator for such services from the Plan Expense Reserve Fund on or after the date that is fifteen (15) days after the submission to the Plan Administrator by such professionals of said monthly invoices, unless, within said fifteen (15) day period, a written objection to said payment is made, in which event such payment shall be made only upon either (a) agreement of the parties or (b) Order of the Bankruptcy Court.

# ARTICLE VI
# DISTRIBUTIONS

6.1    <u>Disbursing Agent</u>.  All distributions under the Plan shall be made by the Plan Administrator as Disbursing Agent, or such other entity designated by the Plan Administrator as Disbursing Agent.

6.2    <u>Expenses of the Disbursing Agent</u>.  Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Disbursing Agent (including, without limitation, taxes and reasonable attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the Plan Administrator in the ordinary course of business.

6.3    <u>Rights and Powers of Disbursing Agent</u>.   The Disbursing Agent shall be empowered to (a) effect all actions necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, (c) employ professionals to represent it with respect to its responsibilities and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof. In furtherance of the rights and powers of the Disbursing Agent, the Disbursing Agent shall have no duty or obligation to make distributions to any Holder of an Allowed Claim unless and until such Holder executes and delivers, in a form acceptable to the Disbursing Agent, any documents applicable to such distributions.

6.4    <u>Delivery of Distributions</u>.  Subject to Bankruptcy Rule 9010, all distributions to any Holder of an Allowed Claim or Allowed Administrative Expense Claim shall be made at the address of such Holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor or its agent, as applicable, unless the Debtor or Post-Confirmation Debtor has been notified in writing of a change of address by the filing of a proof of Claim by such Holder that contains an address for such Holder different than the address of such Holder as set forth on the Schedules.

6.5    <u>Record Date for Distributions</u>.  As of the close of business on the Effective Date, the registers for Claims shall be closed, and there shall be no further changes in the Holder of record of any Claim.  The Post-Confirmation Debtor, the Disbursing Agent, and the Plan Administrator shall have no obligation to recognize any transfer of any Claim occurring after the Effective Date, and shall instead be authorized and entitled to recognize and deal with for all purposes under the Plan only those Holders of record on the register of Claims as of the close of business on the Effective Date for distributions under the Plan.

6.6    <u>Reserve for Plan Expenses</u>.   Prior to making any distributions, the Plan Administrator shall set aside, deduct, and reserve an amount of Cash equal to the estimated amount of Plan Expenses in the Plan Expense Reserve Fund, which amount shall be agreed-to by the Indenture Trustee. Any Cash in such Plan Expense Reserve Fund that the Plan Administrator deems to be excess prior to the closing of the Chapter 11 Case shall be distributed to Holders of Allowed Claims pursuant to Article IV of the Plan.

6.7     Objections to Claims.  Subject to the express provisions of this Plan, the Plan Administrator shall have the exclusive authority to file, settle, compromise, withdraw or litigate any objections to Claims. Objections to Claims shall be filed with the Bankruptcy Court and served upon affected Creditors no later than one hundred eighty (180) days after the Effective Date, provided, however, that this deadline may be extended by the Bankruptcy Court upon motion of the Plan Administrator, as applicable. Notwithstanding the foregoing, in the event that a party filing any Claim after the applicable Bar Date shall obtain the written consent of the Plan Administrator to file such Claim late or obtains an order of the Bankruptcy Court upon notice to the Plan Administrator that permits the late filing of the Claim, then the Plan Administrator shall have one hundred eighty (180) days from the date of such written consent or order to object to such Claim, which deadline may be extended by the Bankruptcy Court upon motion of the Plan Administrator. Subject to Bankruptcy Court approval, objections to Claims may be litigated to judgment, settled, or withdrawn by the Plan Administrator. For the avoidance of doubt, the Plan Administrator shall not object to the Secured Bond Claim Amount.

6.8     Distributions on Disputed Claims.  Distributions with respect to and on account of Disputed Claims will be made as soon as practicable after an order, judgment, decree or settlement agreement with respect to such Claim becomes a Final Order rendering such Claim an Allowed Claim, provided that (a) the applicable Creditor shall not receive interest on its Allowed Claim, despite anything contained herein to the contrary, from the date the objection is filed and served to the date of allowance of such Claim, and (b) nothing herein shall require the Disbursing Agent to make a distribution other than in accordance with Article VI of this Plan.

6.9     Disputed Claim Reserves.  On and after the Effective Date, the Plan Administrator shall establish and maintain reserves for all Disputed Claims. For purposes of establishing a reserve, Cash will be set aside equal to the amount that would have been distributed to the Holders of Disputed Claims in such Class had their Disputed Claims been deemed Allowed Claims on the Effective Date or such other amount as may be approved by the Bankruptcy Court upon motion of the Plan Administrator. If, when, and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order or by settlement by the Plan Administrator, the relevant portion of the Cash held in reserve therefor shall be distributed by the Disbursing Agent to the Creditor. The balance of such Cash, if any, remaining after all Disputed Claims have been resolved, shall be distributed Pro Rata to all Holders of Allowed Claims in accordance with Article IV of the Plan. No payments or distributions shall be made with respect to a Claim that is a Disputed Claim pending the resolution of the dispute by settlement or Final Order.

6.10    Unclaimed Property.  Within forty-five (45) days after any distribution, the Disbursing Agent shall serve upon all parties requesting notice a report of undeliverable distributions.  If any distribution remains unclaimed for a period of sixty (60) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the Holder entitled thereto, or if such distribution is returned to the Disbursing Agent by the United States Postal Service marked as undeliverable, such unclaimed property shall be forfeited by such Holder absent further order of the Bankruptcy Court. Furthermore, all right, title and interest in and to the unclaimed property shall be held in reserve by the Post-Confirmation Debtor to be distributed to other Creditors in accordance with this Plan. Any distribution that remains unclaimed for a period of sixty (60) days after the Disbursing Agent making the final distribution under the Plan shall, after satisfaction of any accrued but unpaid Plan Expenses, be donated to the American Bankruptcy

Institute Endowment Fund, a not-for-profit, non-religious organization dedicated to, among other things, promoting research and scholarship in the area of insolvency.

6.12    Withholding Taxes.  Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes. Allowed Claims of Holders otherwise entitled to receive a distribution under the Plan but who fail to provide a complete IRS W-9 form within thirty (30) days after request is made by the Disbursing Agent shall be entitled to no distribution without further order of the Bankruptcy Court; provided, however, that where any such Holder would be entitled to receive a distribution of $10,000 or more, the Disbursing Agent or Plan Administrator shall seek an order of the Bankruptcy Court expunging the Claim.

6.13    Fractional Cents.  Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

6.14    Payments of Less than Twenty-Five Dollars.  If a Cash payment otherwise provided for by this Plan with respect to an Allowed Claim would be less than twenty- five ($25.00) dollars (whether in the aggregate or on any payment date provided in this Plan), notwithstanding any contrary provision of this Plan, the Disbursing Agent shall not be required to make such payment and such funds shall be otherwise distributed to Holders of Allowed Claims in accordance with Article IV of the Plan. The Disbursing Agent or Plan Administrator may decide to contribute undistributed funds to the American Bankruptcy Institute Endowment Fund, in accordance with Section 6.10 of the Plan if in the reasonable judgment of the Disbursing Agent or Plan Administrator, the cost of calculating and making the final distribution of the remaining distributable funds is excessive in relation to the benefits to Creditors who would otherwise be entitled to such funds, and the Claims of any such Holders shall be entitled to no further distribution without further order of the Bankruptcy Court.

6.15    Means of Cash Payment.  Cash payments made pursuant to the Plan shall be by check, wire or ACH transfer in U.S. funds or by other means agreed to by the payor and payee or, absent agreement, such commercially reasonable manner as the payor determines in its sole discretion.

6.16    Setoffs.  Except as otherwise provided for herein, the Plan Administrator may, but shall not be required to, set off against any Claim and the payments to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or its estate may have against the Creditor, but neither the failure to do so nor the allowance of a Claim hereunder shall constitute a waiver or release by the Debtor or its estate of any claim it may have against the Creditor.

## ARTICLE VII
## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

7.1     Any and all pre-petition leases or executory contracts not previously rejected by the Debtor, unless (i) specifically assumed pursuant to order(s) of the Bankruptcy Court prior to the Confirmation Date; or (ii) is the subject of a motion to assume or assume and assign pending on the Confirmation Date; or (iii) is expressly identified on the Assumption Schedule, shall be deemed rejected by the Debtor on the Confirmation Date; provided, however, that nothing in this Article VII shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtor or its estate.

7.2     All proofs of claim with respect to claims arising from the rejection of executory contracts or leases shall, unless another order of the Bankruptcy Court provides for an earlier date, be filed with the Bankruptcy Court within thirty (30) days after the mailing of notice of entry of the Confirmation Order.

## ARTICLE VIII
## CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN

8.1     Conditions to Consummation.   The Plan shall not become effective unless and until each of the following conditions has been satisfied:

(a)     The Bankruptcy Court shall have entered the Confirmation Order;

(b)     The Confirmation Order shall have become a Final Order; and

(c)     The Post-Confirmation Debtor or Plan Administrator shall have reasonably determined, after consultation with the Indenture Trustee, that the assets of the estate will be sufficient to satisfy all Allowed Administrative Claims and to fund the Plan Expense Reserve Fund and the Disputed Claim reserve.

In the event that the Plan has not become effective on or before 180 days after the Confirmation Date, the Post-Confirmation Debtor shall file and serve on the Office of the United States Trustee a status report.

8.2     Waiver of Conditions.  The Plan Administrator, in consultation with the Indenture Trustee but otherwise in its sole discretion, may at any time, without notice or authorization of the Bankruptcy Court, waive the condition set forth in Sections 8.1(c) above. The failure of the Plan Administrator to satisfy or waive such condition may be asserted by the Plan Administrator regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Plan Administrator). The Plan Administrator reserves the right to assert that any appeal from the Confirmation Order shall be moot after consummation of the Plan.

8.3     Effect of Failure of Condition.  In the event that the condition  specified  in Section 8.1(c) of the Plan has not occurred or been waived on or before ninety (90) days after the Confirmation Date, the Confirmation Order may be vacated upon order of the Bankruptcy Court after motion made by the Debtor or any party in interest.

## ARTICLE IX
## <u>RETENTION OF JURISDICTION</u>

9.1     Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by the Post-Confirmation Debtor or Plan Administrator, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(a)     <u>Claims</u>.  To determine the allowability, classification, or priority of Claims against the Debtor upon objection by the Post-Confirmation Debtor or Plan Administrator.

(b)     <u>Injunctions</u>.  To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Case on or before the Effective Date with respect to any Entity.

(c)     <u>Fee Claims</u>.  To determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods before or after the Effective Date, as provided for in the Plan.

(d)     <u>Dispute Resolution</u>.  To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of distributions thereunder.

(e)     <u>Leases and Executory Contracts</u>.  To determine any and all motions for the rejection, assumption, or assignment of executory contracts or unexpired leases, and to determine the allowance of any Claims resulting from the rejection of executory contracts and unexpired leases.

(f)     <u>Actions</u>.  To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted prior to the closing of the Chapter 11 Case, including any remands.

(g)     <u>Causes of Action</u>.  To determine any and all "Causes of Action" as defined under Section 1.16 of the Plan.

(h)     <u>Taxes</u>.  To hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 346, 505, and 1146.

(i)     <u>General Matters</u>.  To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code, including but not limited to in connection with the sale or liquidation of Assets by the Post-Confirmation Debtor.

(j)    Plan Modification.    To modify the Plan under Section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes.

(k)    Aid Consummation.    To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity, to the full extent authorized by the Bankruptcy Code.

(l)    Implementation of Confirmation Order.    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated.

(m)    Final Decree.    To enter a Final Decree closing this Chapter 11 Case.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

10.1    Pre-Confirmation Modification.    The Plan may be altered, amended or modified by the Debtor before the Confirmation Date as provided in Section 1127 of the Bankruptcy Code.

10.2    Post-Confirmation Immaterial Modification.    The Post- Confirmation Debtor or the Plan Administrator may, with the approval of the Bankruptcy Court and without notice to Holders of Claims, insofar as it does not materially and adversely affect the interest of Holders of Claims, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary to expedite consummation of this Plan.

10.3    Post-Confirmation Material Modification.    The Plan may be altered or amended after the Confirmation Date by the Post-Confirmation Debtor or Plan Administrator in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims, provided that such alteration or modification is made after a hearing as provided in Section 1127 of the Bankruptcy Code.

10.4    Withdrawal or Revocation of the Plan.    The Post Confirmation Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date. If the Post Confirmation Debtor revokes or withdraws the Plan, then the result shall be the same as if the Confirmation Order had not been entered and the Effective Date had not occurred.

10.5    Binding Effect.    Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against the Debtor and such Holder's respective successors and assigns, whether or not the Claim of such Holder is Impaired under the Plan, whether or not such Holder has accepted the Plan and whether or not such Holder is entitled to a distribution under the Plan.

10.6    Successors and Assigns.    The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Entities.

10.7    **Exculpation.**  **Except as otherwise expressly provided by the Plan or the Confirmation Order or other Final Order of the Bankruptcy Court, on the Effective Date, the Exculpated Parties and each of their respective agents, representatives, successors and assigns, shall be deemed released and exculpated from any claims, obligations, rights, causes of action and liabilities for any act or omission in connection with, or arising out of, the Chapter 11 Case, including, without limiting the generality of the foregoing, all sales of assets, negotiation of debtor-in-possession financing, the Disclosure Statement, the formulation, dissemination and pursuit of approval of the Disclosure Statement, the formulation, dissemination and pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions that constitute willful misconduct, gross negligence or fraud, and all such Persons, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and under the Bankruptcy Code.**

10.8    **Limited Releases.**  **Except as otherwise expressly provided or contemplated by the Plan or the Confirmation Order, effective as of the Confirmation Date but subject to the occurrence of the Effective Date, and in consideration of the services of and other forms of consideration being provided by the Released Parties, the Debtor, the Debtor's chapter 11 estate, the Post-Confirmation Debtor and all Holders of Claims shall release, waive and discharge unconditionally and forever each of the Released Parties from any and all Claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (including those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising in law, equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence: (i) taking place before the Petition Date in connection with or relating to the Debtor or any of its direct or indirect subsidiaries; and (ii) in connection with, related to, or arising out of this Chapter 11 Case, all sales of assets, negotiation of debtor-in-possession financing, the formulation, dissemination or pursuit of approval of the Disclosure Statement, the formulation, dissemination or pursuit of confirmation of the Plan, the consummation thereof, the administration thereof or the property to be distributed thereunder; provided that the foregoing shall not operate as a waiver of or release from any causes of action arising out of the willful misconduct or the gross negligence of any Released Party unless such Released Party acted in good faith and in a manner that such Released Party reasonably believed to be in or not opposed to the best interests of the Debtor, and with respect to any criminal action or proceeding, had no reasonable cause to believe such Released Party's conduct was unlawful; provided, however, that the foregoing shall not operate as a waiver or release of any rights or obligations arising from and after the Effective Date in respect of any agreements expressly entered into or reaffirmed hereunder as of or following the Effective Date.**

10.9    **Injunction.**  **Except as otherwise expressly provided in the Plan, on and after the Confirmation Date, all Entities who have held, hold or may hold Claims against the Debtor are permanently enjoined from and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor's estate, the Post-Confirmation Debtor, or any of the Released Parties, any of their property, or any direct or**

**indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities, including without limitation the Plan Administrator, or any property of any such transferee or successor; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, of any judgment, award, decree or order against the Debtor's estate, the Post-Confirmation Debtor, or any of the Released Parties, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to any of the foregoing Entities, including without limitation the Plan Administrator; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor's estate, the Post-Confirmation Debtor, or any of the Released Parties, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to any of the foregoing Entities, including without limitation the Plan Administrator; (d) asserting any right of setoff, of any kind, directly or indirectly, against any obligation due the Debtor's estate, the Post-Confirmation Debtor, or any of the Released Parties, any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Entities, including without limitation the Plan Administrator; and (e) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Plan. Unless otherwise provided in the Confirmation Order, all injunctions or stays arising under or entered during the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, that are in existence on the Confirmation Date shall remain in full force and effect until the Effective Date; provided, however, that no such injunction or stay shall preclude enforcement of any interested party's rights under the Plan and the related documents.**

      10.10  <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Texas.

      10.11  <u>United States Trustee Fees</u>.  All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtor on or before the Effective Date. Thereafter, the Plan Administrator shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a final decree or an order converting or dismissing this Chapter 11 Case.

      10.12  <u>Notices</u>.  Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

      To:    The Post-Confirmation Debtor:

             Leading Life Senior Living, Inc.
             c/o B. Riley Advisory Services
             3445 Peachtree Road, Suite 1225
             Atlanta, GA 30326
             Attention: Joseph V. Pegnia
             e-mail: jpegnia@brileyfin.com

With a copy to:

Rachael L. Smiley
Ferguson Braswell Fraser Kubasta PC
2500 Dallas Parkway, Suite 600
Plano, Texas 75093
Email: rsmiley@fbfk.law

10.13   <u>Non-Voting Equity Securities</u>.  To the extent applicable, the Debtor shall comply with the provisions of Section 1123(a)(6) of the Bankruptcy Code.  For the avoidance of doubt, the Debtor believes that Section 1123(a)(6) of the Bankruptcy Code is not applicable to this Plan.

10.14   <u>Retiree Benefits</u>.  From and after the Effective Date, to the extent required by Section 1129(a)(13) of the Bankruptcy Code, the Post-Confirmation Debtor shall continue to pay all retiree benefits (as defined in Section 1114 of the Bankruptcy Code), if any, established or maintained by the Debtor prior to the Effective Date. For the avoidance of doubt, the Debtor believes that there are no such benefits.

10.15   <u>Saturday, Sunday, or Legal Holiday</u>.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

10.16   <u>Section 1146 Exemption</u>.  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the revesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Without limiting the foregoing, pursuant to Section 1146(a) of the Bankruptcy Code, the sale by the Post-Confirmation Debtor or Plan Administrator of any real property, or recordation by the Post-Confirmation Debtor or Plan Administrator  of any deed of trust or mortgage (including any amendment to any deed of trust or mortgage), from and after the Effective Date of the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.

10.17   <u>Severability</u>.  If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan may, at the option of the Debtor remain in full force and effect and not be deemed affected. However, the Debtor reserves the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan,

as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

10.18    <u>Headings</u>.  The headings used in this Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the provisions of the Plan.

10.19    <u>Waiver of Stay</u>.  The Debtor requests as part of the Confirmation Order a waiver from the Bankruptcy Court of the fourteen day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the fourteen day stay of Bankruptcy Rule 6004(h).

**ARTICLE XI**
**<u>CONFIRMATION REQUEST</u>**

11.1    The Debtor hereby requests confirmation of the Plan pursuant to Section 1129(a) of the Bankruptcy Code.

Dated:  May 11, 2023

Leading Life Senior Living, Inc.

By:   */s/ Joseph V. Pegnia*
          Name: Joseph V. Pegnia
          Title:   Chief Restructuring Officer

Submitted by:

Rachael L. Smiley (State Bar. No.24066158)
Alex Campbell (State Bar No. 24095536)
2500 Dallas Parkway, Suite 600
Plano, TX 75093
Phone: 972-378-9111
Fax:   972-378-9115
rsmiley@fbfk.law
acampbell@fbfk.law

**COUNSEL FOR DEBTOR IN POSSESSION**